Wohlford *et al. v.* Citizens' Building, Loan and Savings Association.

Filed March 1, 1895.

---

17,071.

## WOHLFORD ET AT. *v.* THE CITIZENS' BUILDING, LOAN AND SAVINGS ASSOCIATION.

CORPORATIONS.—*Directors, Powers of.—Assessments.*—Where a statute provides that the business of a corporation shall be managed by its directors, such directors have full authority to act for the corporation in all ordinary matters within the scope of its powers. They may make all proper assessments.

BUILDING ASSOCIATIONS.—*Assessing Members to Pay Debts of Association.— Winding Up.—Liability of Borrower on Note and Mortgage.*— Under the statutes of this State the board of directors of a building association may assess on the entire amount of the unpaid stock of both its borrowing and nonborrowing members, when winding up the association, a sum sufficient to pay the indebtedness of the association, including an amount sufficient to equalize the borrowing members who have paid out in due course of time, and also on the nonborrowing members; and such assessment against a borrowing member may be recovered on a note and mortgage given to secure it, given for a loan wherein is a promise to pay all assessments of the borrower's stock.

SAME.—*By-Laws Form Part of Contract for Member's Loan.*—The rules, by-laws, and regulations of a building association enter into and form part of a borrowing member's contract with the association for a loan.

SAME.—*Liability of Member for Losses and Debts.—Evasion of Liability.* —Every member of a building association, borrower and nonborrower, share in the common gains and profits of the enterprise in the direct ratio of his interest therein, and is liable to contribute in the same ratio to the payment of the losses and debts incident to the operation of the business of such association; and the obligations can not be evaded during his membership, when such arrears stand

against him, by a transfer of his stock or a withdrawal from the corporation.

From the Huntington Circuit Court.

*J. M. Hatfield, M. L. Spencer* and *W. A. Branyan,* for appellant.

*J. B. Kenner, U. S. Lesh, O. W. Whitlock* and *S. E. Cook,* for appellee.

JORDAN, J.—This action was commenced by appellee against appellant and wife, in the court below, on January 14, 1892, upon a certain note and mortgage. A trial resulted in the former obtaining a judgment upon the note, and a decree of foreclosure upon the mortgage. Appellee is a corporation duly organized under the laws of this State providing for organization and operation of building, loan and savings associations, and its existence, for doing business, was by its articles of association limited to eight years, from and after the date of its organization, which was November 12, 1883, and at the time of bringing this action it was engaged in winding up its business under section 3006, R. S. 1881, which continued its existence for three years for that purpose. The association was composed of two classes of members, namely, "borrowers" and "non-borrowers." Appellant was a member of the association, belonging to the first-mentioned class, and was a holder and owner of ten shares of the capital stock of two hundred dollars each, which he obtained at the time he executed the note and mortgage in question. Under the law, and constitution, rules and by-laws governing the operation of appellee's association, the weekly payments on shares of stock, which are denominated dues, were loaned to members, and the plan was to offer the money on hand each month to its members at a public bidding for the privilege of obtaining the loan, and the stockholder offering the

highest premium was granted the loan, provided he could give the required security.

It appears then, by this plan, that if a member is the owner of one share of stock of two hundred dollars, and desires to procure a loan, he bids, say, twenty per cent. premium, or in other words offers to relinquish to the association twenty dollars on each one hundred dollars, or forty dollars on his share of two hundred dollars. He, in this manner, only receives in money on his one share, $160, and is required to execute his note for $200, and secure the same by a mortgage. It also appears from this mode of procedure that the borrowing member, including the amount which he bids as a premium, receives his full share in advance of the maturity of his stock. He and all other members are required to pay twenty-five cents per week on each share of stock, amounting to thirteen dollars per year, or during the period of eight years—the lifetime of the association— the amount so paid in dues would be $104 on his share of $200, which, in other words, would, at the end of the eight years, leave unpaid upon it ninety-six dollars, provided he pays no further sum than the weekly dues of twenty-five cents. He also pays the interest weekly on his loan along with his stock dues.

In February, 1885, appellant seems to have borrowed from this association, by the plan above stated, $1,060, and executed to the corporation the following note or obligation, and also the mortgage to secure the same, in which he expressly agreed to pay the sum secured thereby :

"$1,060.        HUNTINGTON, IND., February, 1885.

"For value received, I promise to pay to the order of the Citizens' Building, Loan and Savings Association, of Huntington, Ind., two thousand dollars, with interest on ten hundred and sixty dollars, eight years after the

Wohlford *et al. v.* Citizens' Building, Loan and Savings Association.

date of incorporation of said association, viz.: November 12, 1883, or whenever said association shall be declared by its board of directors legally ended; interest at the rate of 6 per cent. per annum, payable in equal weekly installments on Saturday of each week; and I do further promise and agree that should the weekly installments of interest hereon, as aforesaid, remain due and unpaid for three months, or should my stock in said association be forfeited for the nonpayment (of the weekly installments of dues, or for any fines or assessments thereon, or for the nonpayment) of the taxes, ground rents or fire insurance premium on the property mortgaged to said association to secure the payment of this note, for three months after the same becomes due, as provided by the constitution and by-laws of said association, then and in either case the whole amount of principal and interest of this note, together with all unpaid dues, fines and assessments on the shares of stock of said association owned by me, and all ground rents, fire insurance premiums and taxes paid or advanced by said association on said mortgaged premises shall become immediately due and collectible, all without relief from valuation or appraisement laws, with attorney's fees.

"No. 17.                    JOHN M. WOHLFORD."

It appears from the claim made by appellee in its brief that shortly prior to the end of its corporate existence it was ascertained that its entire assets accumulated from all sources would not be sufficient to pay all of its debts, claims and losses. These, in the main, growing out of the fact that a portion of its stockholders, who were nonborrowers, had paid to the association their money during the entire period of eight years, but had received nothing in return upon their stock, and that they will not, under the circumstances, receive anything

unless each member is compelled to pay in addition to what he has paid a sum sufficient to equalize all, so at the close of the association the non-borrower may be on an equality with the borrower, and all go out alike. In order to effectuate this, appellee's board of directors convened in special session on July 28, 1891, and adopted the following resolution, levying an assessment on each share of stock:

"WHEREAS, The legal limit of the Citizens' Building, Loan and Savings Association ends November 12, 1891; and,

"WHEREAS, At that date the dues and interest accumulating from every source will not pay every share of stock out in full; and,

"WHEREAS, The borrowing members have received the amount of two hundred dollars on each share by them borrowed on, but the nonborrowers have not, and there will not be realized from the dues, interest and all other sources a sufficient sum of money to pay all stockholders an equal sum with the borrower and other debts of the association except by an assessment; therefore, be it

"*Resolved,* That this association levy an assessment of $22 \frac{51}{100}$ per cent. on each dollar of stock outstanding for the purpose of paying all members equally on their stock at the expiration of the association.

"*Resolved,* That the secretary of this association is hereby ordered to notify each stockholder of this assessment, and said notice shall contain the amount due from each."

The principal assignment of errors, and the only ones that we deem necessary to consider, are:

"1st. Overruling the demurrer to the complaint.

"2d. Sustaining a demurrer to the fifth and sixth paragraphs of answer.

"3d. Overruling motion for a new trial."

We think the complaint is substantially good. One similar was held sufficient by this court in *Borchus* v. *Huntington Building, etc., Assn.,* 97 Ind. 180.

There was no error in sustaining the demurrer to the fifth paragraph of the answer, even if we could hold that the facts therein set up constituted a defense to the action, for the reason that appellant could avail himself of the same defense under other remaining paragraphs of his answer.

By the sixth paragraph of the answer, appellant attempted to set up, as a defense to the action, that the assessment in suit was made by the board of directors, instead of the association as a whole. There was no error in sustaining a demurrer to this paragraph.

Section 3408, R. S. 1881, 4445, R. S. 1894, Elliott's Sup. 841, provides, "that the business of the association shall be managed by a board of directors."

And section 14 of appellee's constitution provides, "that the directors shall meet at a time stated therein for the transaction of the business of the association."

Where it is provided by the statute, under which a corporation is organized, that the business thereof shall be managed by its directors, the provisions must be construed to vest in them full authority to act for the corporation in all ordinary matters within the scope of its powers. Beach Private Corp. sections 227 and 232.

The assessment against appellant upon his stock made by virtue of the foresaid resolution, amounted to $450.20, this he refused to pay, which refusal, upon his part, resulted in this action being instituted upon the note and mortgage heretofore mentioned.

The remaining, and, in fact, the controlling question, in the case to be determined, in this: Was appellee authorized to make the assessment call in controversy

upon appellant's stock, and upon his refusal or failure to pay the same, proceed to collect it by suit upon the note and mortgage?

The contentions of the learned counsel for the appellant upon this proposition are:

First. That the debt, embraced in the note and secured by appellant's mortgage, was wholly paid by him before the commencement of the action, in as much as appellee's by-laws provided that all loans should become due in eight years, and at the end of that time, the note and stock should be set off against each other.

Second. That the statute, section 3419, R. S. 1881, limits assessments to twenty-five cents per month, to be collected with other installments for expenses. And in as much as appellee had not accepted the provisions of the act of 1885 (Acts of 1885, p. 81), as provided by section 15, of said act (4458, R. S. 1894), it could not be held to be authorized under this act to make assessments to pay losses.

Third. That the note in suit does not include assessments to pay losses, debts and expenses.

While, on the other hand, the learned counsel for appellee, contend that its association had full power and authority to make the assessments upon its stockholders, for the purpose of closing up its business, paying its debts and losses and adjusting matters among its members, in order that the "borrowers" and "non-borrowers" at the winding up of the corporation might stand on an equality with each other.

The determination of these important questions, which are new so far as the decisions of this court are concerned, require a careful examination and consideration of the statutes pertaining to building and loan associations. In our opinion, neither of the contentions of the learned counsel for appellant can be sustained. It is

evident, as a legal proposition, that when appellant became a borrowing member of this corporation, he did so, subject to its by-laws, rules and regulations, and also to the express and implied powers with which it was invested by law.

Section 30 of appellee's by-laws, among other things, provides: "That the notes and mortgages given by members who receive loans must secure the repayment thereof, interest and premium thereon, with all weekly dues, together with all fines and assessments on stock held by the member, etc."

It would seem that this by-law contemplated that assessments upon stock might and would be made, and, therefore, provided that payment of the same should be covered by the borrower's note and secured by his mortgage.

By an examination of the several sections of the act of 1875, under which appellee was organized, it will be found that section 4 (being section 3410, R. S. 1881), provides: "That every share of stock shall be subject to a lien for the payment of unpaid installments and and other charges incurred therein, under the provisions of the constitution and by-laws."

Again, in section 3412, R. S. 1881, it is stipulated that "good and ample real estate or personal security, as prescribed by the by-laws of the corporation, shall be given by the borrower to secure the repayment of the loan with interest, and also for the payment of the dues, fines, and assessments that may be assessed on his share of stock upon which the loan is made."

Section 3413 provides: "That a borrower who is not in arrears for dues, interest, fines or assessments may pay his loan at any time and withdraw from the association, etc."

Section 3419 reads as follows: "All such associations

shall have power to assess, in addition to* section 4 of this act [section 3410] * * * and shall also have the power to provide in their by-laws for the assessment* of fines and penalties * * * interest, installments, and assessments.''

It is manifest, we think, that, giving a reasonable interpretation to these several sections, we must conclude that assessments, such as the one in question, were intended to be, and are authorized to be levied by these corporations upon the unpaid capital stock of their members. But, if we are wrong in this conclusion, the law must still be held to be with appellee upon the proposition in controversy. Under and by virtue of section 12 of the act of 1885, being section 4455, R. S. 1894, which is similar in some respects to 3419, R. S. 1881, an express warrant is granted therein to these associations to make an assessment or stock call to cover losses.

This section, in part, reads as follows: ''All such corporations shall have power to charge, in addition to the amount heretofore provided by this act, a sum not exceeding twenty-five cents per month upon each share of stock, for the purpose of defraying the expenses of the association, which sum shall be payable with the regular installments; to make assessments upon the capital stock to cover losses, etc.''

But it is insisted by appellant that appellee had no right to exercise any powers under this last mentioned act for the reason that it is not shown that it filed its written acceptance of the provisions thereof, as provided by section 854, Elliott's Supp. (4458, R. S. 1894). This contention, in view of the interpretation of the act of 1885 by this court, can not be upheld.

In the case of *Hatfield* v. *Huntington City Building, Loan and Savings Assn.*, 132 Ind. 149, this court, in passing upon this question, said: ''Nor do we think it was

necessary to allege that the appellee had filed a written acceptance provided for by section 854, Elliott's Supp. It is evident from the reading of the entire act, of which that section constitutes a part, that it was not the intention of the General Assembly to dissolve or abolish existing building and loan associations, or to deprive them of any of the rights they possessed under the laws then in existence. It was its purpose to enlarge, rather than to restrict, their powers and privileges.'' See, also, *McLaughlin* v. *Citizens' Building, Loan and Savings Assn.*, 62 Ind. 264, and section 4461, R. S. 1894.

We concur in this construction placed upon the act of 1885, and, in our opinion, it was not necessary for appellee to formally accept in writing the provisions of this act, in order that it might exercise the enlarged powers granted to it thereunder. It therefore follows, from this conclusion, that it must be held that appellee, by section 4458, *supra*, was given the right and power to make the assessment upon appellant's stock, for the purpose of covering losses, and thereby equalizing its members, so that, at the final close, all might go out on an equal footing. Appellant, in support of his first contention, relies upon the case of *Lima City, etc., Loan Assn.* v. *Wagner*, 122 Ind. 78.

It is true that in that case, on the question therein involved, this court held, under a by-law of the association, which provided that all loans should become due in six years from the date of incorporation, or upon the stock of the association becoming of par value, and that then the stock and note of the borrower might be set off against each other, that a borrower who had paid his weekly dues and installments, for a period of six years, discharged his obligation to the association. This was upon the theory of the by-law, that by paying the required dues and installments for that period, he would

have paid the equivalent of the loan which he obtained. The rule, thus stated by the learned judge, in the opinion in that case, under the facts and issues in the case at bar, is not applicable to the determination of the question now before this court. While it appears that the by-law in the Wagner case, *supra*, was identical, except as to time, with the one relied upon by appellant, however, the point in controversy in the Wagner case was as to the right of the corporation to exact the payment of the weekly dues and interest from the borrower after the expiration of the legal limit of the association. It did not appear in that case, as it does in this, that the corporation was insolvent, and that prior to the determination of its existence, the borrowing member was in arrears upon his stock assessment, made for the purpose, as was the one now in question. Had the same facts and theory been involved, a different question would have necessarily arisen. It is apparent, therefore, that the principle of law therein enunciated must be distinguished from the one now involved, and that appellant, under the facts herein, is not in a position to invoke that decision to sustain his contentions.

The case of *Lister* v. *Log Cabin, etc., Assn.*, 38 Md. 115, and other authorities cited by the court in support of the rule laid down in the Wagner case, do not sustain the theory of appellant's defense, namely, that his membership had ceased, and that he was under no obligation to pay his proportion of the losses; but, upon the other hand, they tend to support the claim of appellee.

Appellant was, under the law, entitled, with all other members of this association, borrowers and nonborrowers, to share in the common gains and profits of the enterprise in the direct ratio of his interest therein, and was, also, in our judgment, liable to contribute in the same proportion to the payment of the losses and debts

incident to the operation of the business of the association, and this obligation he could not evade during his membership, when such arrears stood against him, by a transfer of his stock or a withdrawal from the corporation. Section 3413, *supra*, and see authorities cited in 2 Am. & Eng. Encyc. of Law, pp. 618 and 622.

Appellee was a corporation, organized as are others, for the purpose of profit and gain, and near the close of its existence it is discovered that it is virtually in a state of insolvency, and that a certain sum is necessary to liquidate losses and debts, and settle and adjust affairs among its stockholders.

Why then can it be said that it must be denied the right, under the law, to levy an assessment upon the unpaid stock of its members for that purpose? We can see no reason why this may not be done under the statute to which we have referred, in like manner as is done by other corporations that are organized for manufacturing or other purposes.

It is, perhaps, true that the unfortunate business affairs of appellee, which seems to have led to its insolvency, and forced it to take the action which it did, will, as contended, result in a hardship upon its members. But we must presume that all who embarked in this common scheme did so upon their own volition and for the purpose of pecuniary benefit, and appellant can not now be heard to complain because the equities of the law will not permit him to escape liability and cast the whole burden of sustaining the losses in question upon his nonborrowing associates. This the law will not tolerate.

It appears that the note in suit contained the stipulations provided for by the by-law and the statute, and that appellant thereby expressly agreed to pay any assessment that might be made upon his stock. Assess-

Wohlford *et al. v.* Citizens' Building, Loan and Savings Association.

ments or demands authorized by the charter or by-laws of a building association may be' included in, and covered by, the note and mortgage of a borrowing member executed by him upon the loan obtained, and, in addition thereto and in default of payment, an action may be instituted thereon for the recovery thereof. See 2 Am. and Eng. Encyc. of Law, p. 633, and other authorities hereinafter cited.

It follows, from the conclusion reached, and it is so adjudged, that appellee was authorized, under the law, to make the assessment for the purpose aforesaid, and that appellant was liable upon his note and mortgage for the payment of the same.

In support of the rule which we have stated, see the following authorities: *Strohen* v. *Franklin, etc., Assn.,* 115 Pa. St. 273; *Callahan's Appeal,* 124 Pa. St. 138; *Laurel Run, etc., Assn.* v. *Sperring,* 106 Pa. St. 334; *Appeal of Criswell,* 100 Pa. St. 488; *People* v. *Lowe,* 117 N. Y. 175; *McGrath* v. *Hamilton, etc., Assn.,* 44 Pa. St. 383, and authorities cited in note 69 Am. Dec. 150; *Parker* v. *United States, etc., Assn.,* 19 W. Va. 769; *Everham* v. *Oriental, etc., Assn.,* 47 Pa. St. 352; *Pattison* v. *Albany, etc., Assn.,* 63 Ga. 373; Endlich on Building Associations (2d ed.), sections 78, 79, 104 and 523.

The court did not err in denying appellant's motion for a new trial.

Judgment affirmed, with costs.

All concur.

Filed April 25, 1895.