HOHENSHELL *et al.;* PIRSCHER, *Appellant,* v. HOME SAVINGS AND LOAN ASSOCIATION, BROWN, *Receiver.*

In Banc, July 6, 1897.

1. **Savings, Loan and Building Associations:** AUTHORITY TO ISSUE PAID UP STOCK. A savings fund, loan and building association, organized under chapter 42, article 9, Revised Statutes 1889, has the authority to issue paid up or prepaid stock even though the charter is silent as to its authority to do so.

2. ———: ———: PREFERRED PAYMENTS. But in the absence of charter provisions or by-laws authorizing it to do so such association can not issue preferred stock, that is, stock entitled to be first paid before other stock of the association is paid.

3. ———: ———: ———: NOTICE OF WITHDRAWAL. Nor is the holder of such paid up stock entitled to preferred payments because he gave notice of his withdrawal from the association and demanded the return of his money while it was yet a going concern and long before he knew it was actually insolvent.

4. ———: ———: ———: EQUALITY OF STOCKHOLDERS. In the absence of some provision in the by-laws or charter or of express contract, one stockholder should not be given preference over another in the distribution of the proceeds of an insolvent building and loan association. No stockholder by the payment of his stock in full becomes a creditor. He is yet a stockholder, no more, no less.

5. ———: ———: ———: CASE STATED. The appellant took $4,000 to defendant building and loan association for the purpose of depositing it and drawing six per cent on it until he got ready to invest it in land, but was persuaded by the secretary to invest it in paid up stock of the association which it was stated would be cashed by the association in thirty days upon appellant's notice of withdrawal. Appellant ,in March presented his notice of withdrawal and demanded his money, which was never paid, and in September the association went into the hands of a receiver. Appellant asks that his claim of $4,000 be made a preferred claim. *Held,* that appellant was not entitled to preference over other stockholders.

*Appeal from Jasper Circuit Court.*—HON. EDWARD C. CROW, Judge.

AFFIRMED.

*Fisse & Kortjohn* for appellant.

(1) The notice of withdrawal of March 7, 1893, accepted as it was by the officers of the association, gave the claimant a preference over other stockholders who had not withdrawn. *In re Sunderland, etc., Building Society,* 24 Q. B. D. 394; *Kemp v. Wright,* 2 Ch. 462; *Walton v. Edge,* 10 App. Cas. 33; *Barnard v. Thompson* (1894) 1 Ch. Div. 374; *McKenny v. Loan*

*Ass'n*, 18 Atl. Rep. (Del.) 905; Endlich on Building and Loan Ass'ns [2 Ed.], sec. 109; *Decatur Building & Investment Co. v. Neal*, 12 So. Rep. (Ala.) 780; *U. S. Building & Loan Ass'n v. Silverman*, 85 Pa. St. 394; *Hartford v. Cooperative Homestead Co.*, 128 Mass. 494; *National Building Ass'n v. Hottenstein*, 10 Pitts. Leg. J. N. S. (Pa.) 225. (2) By withdrawing his running stock on April 7, appellant became entitled to a preference over other stockholders who had not withdrawn the same before the appointment of the receiver. (3) Claimant is entitled to receive back everything that he has paid on account of his paid up stock in excess of the amount which he could have been required to pay. *Munhall v. Bordecker*, 44 Ill. App. 131; *Murray v. Scott*, 9 App. Cas. 519; *Seibel v. Victoria Bldg. Ass'n*, 43 Ohio St. 371; *People v. Lowe*, 117 N. Y. 175; R. S. 1889, sec. 2810. (4) Claimant is entitled to recover back everything that he has paid on account of his running stock in excess of the amount which he could have been required to pay. (5) Under the laws of Missouri in force in 1889 the association had no right to issue paid up stock, and hence the holders of such stock became creditors for all payments in excess of the amount of current monthly dues.

*E. O. Brown* for the receiver.

(1) The association had a right to issue "prepaid" and "paid up" stock. Endlich on Bldg. Ass'ns, sec. 464, p. 440; sec. 465; Davis on Bldg. & Land Societies, p. 18; *In re Guardian Permanent Benefit Bldg. Society*, 23 Ch. Div. 446. (2) The appointment of a receiver by reason of the insolvency of a building and loan association *ipso facto* changes the character of the stock as among the stockholders themselves, and it is

no longer liable to assessments or fines and penalties except for the benefit of creditors. As among the stockholders themselves the stock is absolutely extinguished. Endlich on the Law of Bldg. Associations [2 Ed.], secs. 502, 522 to 525; *Blakely v. El Paso Bldg. & Loan Ass'n*, 26 S. W. Rep. (Tex.) 492; Thompson on Bldg. Ass'n, sec. 30; *Towle v. American Bldg. Loan & Investment Society*, 75 Fed. Rep. 938; *Cook v. Kent*, 105 Mass. 246; *Bowker v. Mill River Loan Ass'n*, 7 Allen, 100; *Windsor & Applegarth v. Randall*, 40 Md. 170. (3) The rule of distribution is that each shareholder should receive from the funds in the receiver's hands such *pro rata* part thereof upon his contribution as the total fund bears to the total contributions of the persistent shareholders. *Criswell's Appeal*, 100 Pa. St. 488; Davis on Bldg. & Land Societies [3 Ed.], 408; Endlich on Bldg. Ass'ns [2 Ed.], p. 505, sec. 515; *Christian's Appeal*, 102 Pa. St. 184; Thompson's Commentaries on the Law of Corporations, sec. 7042. (3) The mere fact that the claimant or any other stockholder may have advanced payments on account of their stock does not entitle him to preference over the claims of other stockholders who did not make such advanced payment. *Criswell's Appeal, supra; Towle v. Am. Bldg. & Loan Ass'n, supra; Post v. Mechanics Bldg. & Loan Ass'n*, 37 S. W. Rep. 216; *Price v. Kendall*, 36 S. W. Rep. 810. (4) The mere fact of giving notice of withdrawal on the part of a stockholder of a building and loan association does not render such holder a creditor so as to entitle him to any priority over holders of stock who have not given such notice of withdrawal or whose stock is not yet matured. All shareholders, whether their stock is paid up, matured, unmatured or withdrawn, upon the insolvency of a building and loan association, share *pro rata* without preference or pri-

ority. Endlich on Bldg. Ass'ns, sec. 514; *In re Assigned Estate Nat. Sav. Loan & Bldg. Association*, 9 W. N. C. (Pa.) 79; *Criswell's Appeal*, 100 Pa. St. 488; *Christian's Appeal*, 102 Pa. St. 184; *In re Alliance Society*, 49 L. T. Rep. 73; Davis on Bldg. & Land Societies [3 Ed.], p. 408. (5) The right of withdrawal exists and may be exercised only while the association is a going concern. It can not be exercised in the event of insolvency. *Christian's Appeal*, 102 Pa. St. 184; *Criswell's Appeal*, 100 Pa. St. 488; *In re Alliance Society*, 49 L. T. Rep. (N. S.) 73; Endlich on Bld'g Ass'n [2 Ed], secs. 108, 514.

BURGESS, J.—In August, 1889, the Home Savings and Loan Association was a corporation organized under article 9, chapter 42, of the Revised Statutes of 1889, entitled "Mutual Savings Fund, Loan and Building Associations." The stockholders of said association were required to begin paying dues from the time they became members thereof. The by-laws of said association provided for so-called running stock, on account of which the holder thereof should pay sixty-five cents per month on each $100 share. Section 34 of the by-laws provided that any member might pay to the association $50 per share in advance, in lieu of all installments, and receive therefor a prepaid certificate of stock of $100 par value at maturity. This was known as Class A. stock. The same section also provided for Class B. stock, on account of which the holder thereof was required to pay $65 per share in advance, in lieu of all installments, and receive a prepaid certificate of stock of $100 par value at maturity with partial dividend coupons payable semiannually in cash out of the profits earned, at the rate of six per cent per annum on the cost thereof. It is further provided in said section that any member may pay in full the face value of the shares at the time of subscription

for the same, or at any time thereafter, and receive therefor a certificate of paid up stock, and shall be entitled to receive in cash on the fifteenth day of July and the fifteenth day of January of each year the full amount of all dividends declared thereon. No monthly installments were to be paid on account of said stock, but said stock was to be governed by the same rule as to withdrawals, and otherwise be subject to the same liabilities, as other stock.

Section 35 provided that the board of directors might at any time limit the issue of certificates of paid up stock and might require any and all members holding such certificates to surrender them on sixty days' notice in writing and receive therefor the amount for which they were issued, together with all dividends declared and still remaining unpaid thereon, with an equitable share of the gains of the association since the last dividend was declared, less a *pro rata* share of losses, such gains or losses to be determined by the board of directors. Said section also further provides that all right to further share in the earnings of the association shall cease sixty days after written notice has been mailed to the postoffice address of the owner of the certificate.

Appellant on the twenty-third day of April, 1892, became the owner of seven shares of paid up stock, represented by certificate number 47, and paid therefor the sum of $100 each, or $700, and on the same day he became the owner of twenty shares of paid up stock, represented by certificate number 46, and paid therefor $100 per share, or $2,000. On the eighth day of March, 1892, he became the owner of ten shares of paid up stock of the said association, represented by certificate number 42, and paid therefor $100 per share, or $1,000, and on the twenty-second day of December, 1892, he became the owner of three shares of paid up

stock of the said association represented by certificate number 61, and paid therefor $100 per share, or $300. Besides the said paid up stock, appellant was the owner of ten shares of running stock, represented by certificate and book number 16042. He subscribed for this stock on the twenty-third day of April, 1892, and on the said day he paid to the said association the sum of $100. On the twenty-ninth day of September, 1892, he paid the further sum of $310.50, making a total paid in by him on account of the said ten shares of stock of $410.50.

At the time when appellant purchased the paid up stock he wanted to deposit the money on interest at six per cent per annum, and on call, but Mr. Frye, the secretary, told him that he had better take the paid up stock because he could withdraw that at any time he might want the money, and that on it he could get more interest than on a deposit. He then told Frye that he expected to buy real estate, and wanted to save this money for that purpose. Thereafter, on the seventh day of March, 1893, he went to the office of the Home Savings and Loan Association where he met Frye and said to him that he now wanted to draw his $4,000, which he had invested in paid up stock, and asked him for a piece of paper so that he might put his notice of withdrawal in writing. The secretary wrote out the notice of withdrawal, laid it before the appellant for his signature and he signed the same, and Frye kept it and told him that he could get his $4,000 by the seventh of April, 1893. A few days after March 7, 1893, appellant again went to the office of the association and asked the secretary, Frye, to give him some certificate to show that he had withdrawn his stock, and had in writing given notice of withdrawal. Frye answered that they never gave such certificates, but that he had entered it up and everything was all

right. After appellant had given notice of withdrawal for his paid up stock, and did not get the money, he went to the office of the association and told Frye that he wanted to withdraw his running stock. He asked Frye for some certificate showing that he had withdrawn all his stock, and he said that it was all right, that appellant would get his money and need not be alarmed. This was in the month of April or May, 1893. In addition to the $4,000 paid by appellant for the paid up stock he was required to pay $1 per share initiation fee, or $40 initiation or membership fee for the said forty shares of paid up stock.

The association having become insolvent, on the tenth day of September, 1893, E. O. Brown, respondent, was by the circuit court of Jasper county appointed receiver for the purpose of winding up its affairs. On the twenty-eighth day of March, 1894, a final decree was entered by said circuit court in said cause, requiring the receiver to turn the assets of said association into money, and to distribute the same among the persons having claims against the association. On the twenty-seventh day of May, 1895, being of the March term, 1895, said court by an entry of record ordered the receiver to notify all persons claiming to be creditors or stockholders of the association to appear before him at a certain time and place, and present their claims to him for allowance. The order fixing the time and place for hearing claims against the association further provided that all claims not presented within the time specified should be forever barred from all participation in the winding up of the affairs of said association and from all benefits from the assets thereof, and upon conclusion of his work in respect to the hearing of such claims the receiver was required to report to the court in which the receivership was pending all the claims by him allowed or

rejected, as the case might be, and any party dissatisfied with his decision might file exception to such. report within ten days from the filing of his report therein, or appeal therefrom by filing with the clerk notice of such appeal. Thereupon the receiver gave the notice required by said order and proceeded to hear claims, as ordered by the said decree, and at such hearing the appellant herein presented for allowance his said forty shares of paid up stock, claiming on account of the same a preference over other stockholders, *first*, by reason of the fact that he had given notice of withdrawal on the seventh day of March, 1893, and *second*, for the reason that under the by-laws of the association he was required to pay only sixty-five cents per share per month from the date of his several paid up certificates up to the time of the appointment of the receiver, to wit, September 30, 1893, and he claimed that everything that he had paid in excess of sixty-five cents per month per share during the said period, was a demand for which he had a right to have a preference over other stockholders who had not made such advance payments. The appellant also presented to the receiver during said term, for allowance, his ten shares of running stock, and claimed a preference upon the same for all sums which he had paid in excess of sixty-five cents per month per share, computed for the period of time between April, 1892, and September, 1893, the time of the appointment of the receiver.

The receiver filed his report on the second day of September, 1895, allowing the general debts against the said association, aggregating the sum of $218.80, and also setting forth that claims were made on so-called convertible receipts, aggregating the sum of $5,604. These receipts were issued under section 36 of the by-laws of the association, which provided that

payments of $10 or more might be accepted and convertible receipts issued therefor, entitling the holder to interest in cash at a rate not exceeding six per cent per annum, payable on the first day of January and July of each year, and at the option of the holder such receipts by surrender thereof should be convertible into the stock of the association on payment of the regular membership fee therefor. The receiver also allowed claims aggregating $13,426.60 based on Class A. stock, claims aggregating $7,462.50 based on Class B. stock, and claims aggregating $19,200 based on full paid stock. The report of the receiver also found that the said full paid Class A. and Class B. stock was entitled to no preference whatsoever, and that appellant was entitled to no preference by reason of the fact that he had given notice of withdrawal, nor by reason of the fact that he had made advance payments on said full paid stock and on said running stock. On the thirtieth day of December, 1895, the circuit court of Jasper county confirmed the report of the receiver as to this appellant (the same having been theretofore confirmed as to all of the claimants who did not appeal therefrom), and found that appellant was entitled to no preference over other stockholders. After an unsuccessful motion for a new trial appellant perfected his appeal to this court.

1. The first question presented for consideration is with respect to the authority of the building and loan association to issue paid up stock.

The general rule is "in the absence of statutory provision expressly authorizing or prohibiting it, that building and loan associations may always permit prepayments of stock subscriptions to be received, with or without rebate or interest allowance in consideration of such prepayment; that, in *pursuance of charter* provisions, such associations may issue paid up stock

with the incident of priority in distribution over installment stock." Endlich on Building Associations, sec. 464; *Criswell's Appeal*, 100 Pa. St. 488.

The charter of the association is silent as to its authority to issue paid up or prepaid stock, and in such circumstances it is clear that it had the right to do so. Endlich on Building Associations, section 461, says: "There is, however, nothing inconsistent with its charter as such, in permitting those of its members who feel themselves in a position to make a number of stock payments not yet due, to do so, thereby anticipating without inconvenience to themselves a duty which would have to be performed in any event, and putting into the hands of the association the means of hastening the final consummation of the enterprise. Accordingly it has never been questioned that an association may allow its members to make advance payments upon the stock held by them." The power to issue stock payable in installments would seem to imply the power to issue prepaid stock, and there is no apparent reason why it should not be so. But in the absence of charter provision or by-laws authorizing it to do so or contract to that effect, it could not issue preferred stock, that is, stock entitled to be first paid, after payment of the general indebtedness over other stock of the association. It follows that appellant did not by his investment in the stock of the association become a creditor of the association.

2. The next question is, what effect, if any, the notice of withdrawal by appellant of March 7, 1893, had upon the rights of other stockholders who had not withdrawn. Appellant contends that by such withdrawal he acquired a preference over all such stockholders. That if a stockholder gives notice of withdrawal while the association is a going concern,

although it be insolvent at the time if at the time of giving such notice he is not really aware of its insolvency, or of the fact that it has sustained losses, then after the expiration of the time limited by statute or the by-laws his rights become fixed; that is to say, he ceases to be a member, has none of the obligations of membership, and none of its rights, is entitled *prima facie* to receive back what he has paid in, and that the burden is on the association to show what losses, if any, it had at the time the notice of withdrawal was given.

Under the statute (R. S. 1889, sec. 2810) any shareholder wishing to withdraw from such corporation has power to do so by giving thirty days' notice of such intention, such notice being given at a regular meeting of the board of directors. Then on the day following the next regular meeting, or at any time thereafter, the member so withdrawing is entitled to receive, on demand, the amount paid in by him or her, and such proportion of the profits as the by-laws may determine, less all fines and other charges. Should there have been, however, a net loss, instead of a net gain, then such withdrawing shareholder shall receive the actual amount paid, less his proportion of such net loss. Does, then, the mere fact of giving notice of withdrawal by a stockholder of a building and loan association make such holder a creditor so as to entitle him to priority over holders of stock who have not given notice of withdrawal or whose stock is not yet matured? The charter and by-laws of the association do not, we think, create any such preference in favor of the withdrawing stockholders as against other stockholders, when the association is insolvent at the time, as in the case at bar, and it makes no difference whether the stockholder withdrawing knew of the insolvency at the time or not.

It is upon principles of equity that the assets of such a corporation must be administered. All classes of stockholders are equally meritorious, and in marshalling the assets no stockholder, in the absence of some provision in the charter or by-laws of the association or express contract to that effect, should be given preference over another. Endlich, in his work on Building Associations [2 Ed.], section 514, says: "There is nothing in the mere fact that one has given a certain number of days' notice that he wants his money, whereby he is *ipso facto* invested with an equity to receive it superior to that of one who has not given such notice. There is therefore nothing to counterbalance, much less to outweigh, the inequitableness of permitting him to take the fund belonging to his fellows in order to pay himself." The true rule upon this subject is undoubtedly that laid down by the Supreme Court of Pennsylvania: "When a building association has failed to fulfill the object of its creation and has become hopelessly insolvent . . . after expenses incident to the administration of its assets are deducted, the general creditors, if any, should be first paid in full, and the residue of the fund should be distributed *pro rata* among those whose claims are based upon stock of the association, whether they have withdrawn and hold orders for the withdrawal value thereof or not. Both classes are equally meritorious, and in marshalling the assets neither is entitled to priority over the other. The claims of each are alike based upon their relation to the association as members thereof." *Christian's Appeal*, 102 Pa. St. 184; Endlich on Building Associations, pp. 505, 506; *In re Assigned Estate Nat. Sav. Loan & Building Association*, 9 W. N. C. (Pa.) 79; *Appeal of Criswell et al.*, 100 Pa. St. 488; *In re Alliance Society*, 49 L. T. Rep. 73.

While the charters whose construction was in-

volved in the cases of *Christian's* and *Criswell's* appeals, *supra*, were special charters, they are substantially the same as the Missouri statute in regard to building and loan associations, and especially with respect to the withdrawal of stockholders, and these adjudications are directly in point on the question now under consideration.

In the recent case of *Towle v. American Building & Loan Association*, 75 Fed. Rep. 938, it is held that holders of certificates of full paid stock, issued by a building and loan association, calling for payments of dividends at regular intervals, are not creditors of the association, as distinguished from its other members, and in case of insolvency of the association, holders of such certificates are only entitled, like other members, to a share of the assets proportioned to the amount they have paid. See *Sills v. N. & S. B. & L. American*, Chicago Daily Law Bulletin, Jan. 16, 1896, p. 2.

In the building and loan associations no stockholder, by his subscription and the payment of his stock in full, becomes a creditor. He is simply a stockholder, no more, no less. "Now, does an equitable division require that the stockholders who have paid in the full amount of their stock in advance should be paid back the whole amount of such advance before the stockholders paying periodically receive anything? Clearly not, in a case where the association can not pay out dollar for dollar. The effect of such a proceeding would be to visit the entire loss upon the ordinary stockholder." *Towle v. American Building & Loan Association, supra.*

Our conclusion is that appellant's relation of stockholder to the association was not changed to that of creditor by reason of his withdrawal, and that he is not entitled to priority in the order of payment over other stockholders of the association holding unpaid stock.

3. The building and loan association being insolvent at the time of appellant's withdrawal therefrom, the effect of such withdrawal was to sever his connection with the association, so that he could not vote at any election thereafter held by the stockholders, nor could he have any voice in the management of its affairs, or be held liable for debts contracted by the association after that time. So that as no such question is involved in this case it is unnecessary to pass upon the question as to whether, under section 2519, Revised Statutes 1889, a creditor of the corporation could proceed against the stockholders who have not paid in full the amount of their stock. From these considerations it follows that the judgment must be affirmed.

It is so ordered. All concur.