[No. 1316.]

## HAWLEY v. THE NORTH SIDE BUILDING AND LOAN ASSOCIATION.

| 11 | 93 |
| 12 | 310 |
| 12 | 312 |
| 12 | 313 |

1. BUILDING AND LOAN ASSOCIATIONS — RIGHTS OF WITHDRAWING MEMBER.

Where the by-laws of a building and loan association provided that a stockholder might withdraw from the association by giving two months' notice of such intention, and at the expiration of this time should receive the full amount of money paid in as dues, with a specified rate of interest, deducting therefrom all fines and arrearages together with a fair proportion of the losses and expenses incurred by the association, H., a member, gave notice of his intention to withdraw in May, but at the end of the two months was notified by the secretary that on account of so many notices of withdrawal preceding his, the association could not pay him and he continued to pay dues and assessments until October when the board of directors passed a resolution in which twelve and one half per cent was determined to be a fair proportion of the losses and expenses and H. was notified that his withdrawal notice would be honored subject to this resolution. *Held* that H. continued to be a member of the association and was bound by the action of the board of directors, and that the withdrawal value of his stock was that of October and not of the time he gave notice of withdrawal, and was subject to a deduction of the proportionate losses and expenses up to that time.

2. SAME — EVIDENCE.

Proof that a printed notice of the withdrawal value of stock in a building and loan association was posted in the office of such association without proving that it was done or authorized by the board of directors, is not sufficient evidence to establish the withdrawal value of the stock.

3. SAME — BURDEN OF PROOF.

Where in an action against a building and loan association by a withdrawing member for the withdrawal value of his stock, he alleges that a resolution of the board of directors was passed fixing the proportion of losses and expenses at twelve and one half per cent, but that such resolution was as to him null and void, the burden was on the plaintiff to show by competent evidence that the association had not sustained such losses and that his stock was of greater value.

*Appeal from the District Court of Arapahoe County.*

Mr. GUY LE R. STEVICK and Mr. ROBERT COLLIER, for appellant.

Messrs. WARD & WARD, for appellee.

BISSELL, J., delivered the opinion of the court.

The North Side Building and Loan Association was a corporation organized under the statutes of 1886 for the purposes usually incident to that class of mutual benefit companies. At the time of its creation there was no statute which defined the plan or prescribed the limits within which such corporations should do business, and by which the rights of the members or the obligations of the corporation were prescribed. In 1889, however, an act was passed concerning such corporations which measurably and in some particulars attempted to confer powers upon these bodies, and limit their authority in some particulars. Nothing in the act, however, affects the questions which are here at issue. It is very apparent from these suggestions that we must look to the charter and the by-laws to ascertain what, if any, rights accrued to appellant Hawley, by virtue of his membership and by reason of his attempted withdrawal and the circumstances surrounding it. As we view the case, it is very largely controlled by the pleadings because there was very little evidence offered by the plaintiff, and on the conclusion of his case he suffered nonsuit.

As Hawley stated it, the corporation was organized in 1886, and thereupon issued its first series of stock, which was followed in 1887 by another series " B," and in March, 1888, by another series " C," to which Hawley became a subscriber. In March, 1888, he subscribed for ten shares, and in April, 1889, ten shares, which he owned until he withdrew in October, 1893. To establish his right of action as he claimed it, after setting up the corporate character of the defendant, he stated the powers of the board of directors and their general authority to control the business of the corporation, and to

enact by-laws for its government and control, and by which the rights of the members were measurably defined and determined. We deem it unnecessary to set out those by-laws in full as they are found in the complaint, though we shall refer to one or two of the articles because they seem to us to control this controversy. By section 1, article 22, it was provided that a stockholder might withdraw from the association by giving the president, at a monthly meeting, two months' notice of such intention; and at the expiration of this time he should receive the full amount of money which he might have actually paid in as dues, with a specified rate of interest, especially subject to this limitation, "deducting in all cases such fines and arrearages as may have been incurred and remaining unpaid, together with a fair proportion of all losses and expenses incurred by the association." This by-law was amended in 1892, but in no particular which affects the questions at issue, since the quoted clause is the same in the amended article as it was in the original. The rate of interest was substantially changed but this is unimportant. In May, 1893, under this amended article, Hawley gave notice to the secretary of the corporation of his intention to withdraw from the association and his purpose to exercise his rights on the expiration of the period provided for by the by-laws. When the term of the notice expired Hawley was informed by the secretary, that it was impossible to pay his claim because of the very great number of notices of withdrawal which had antecedently been given to the company. This was within the manifest power of the board and accorded with the act of 1889 (Session Laws of 1889, page 41) which forbade the company from using more than one half of the funds in its treasury in the payment of claims of withdrawing shareholders. To this suggestion, the plaintiff made no objection, and as the result apparently of some conversation with the secretary, he concluded it would be wise for him to continue his membership and keep up his payments according to the stock and corporate limitations. Accordingly Hawley from month to month, paid the charges and dues until October,

1893, when on the 2d, the board passed a resolution which substantially recited that all withdrawals then made or afterwards to be applied for, should be honored by the payment of the actual money paid in as dues with interest at the specified rate, deducting from the withdrawal values all fines, arrearages, charges and losses which might have been incurred. Twelve and one half per cent was determined to be a fair proportion of the losses and expenses of the association which had been made and sustained up to that time and not met by its profits, and which should be borne by the withdrawing stockholders. After this notice was given, and on the 14th, Hawley was notified by the board that his withdrawal notice would be honored subject to the resolution of October 2. This led to a discussion between Hawley and the secretary, to which, apparently, the board was not a party. Hawley insisted that he was entitled to the full sum without a deduction of the twelve and one half per cent, and the secretary declined to pay on that basis. The financial condition of affairs resulting from the panic of 1893 had evidently caused the company to suffer material diminution in the value of the assets represented by the property on which loans had been made, and which the association were some times compelled to take in satisfaction of the sums borrowed. Whether it was this condition which induced Hawley to do what he did, is not clear, but in any event, the secretary figured up the withdrawal value of the twenty shares, the amount paid per share for the sixty-seven months during which Hawley had held it, with interest, which made the gross withdrawal value on October 18, 1893, $84.93 per share. From this was deducted the twelve and one half per cent, which made the net withdrawal value $74.32, and the total sum $1,486.60. A check for this sum was offered to Hawley in payment and he accepted it, though as he charged in his complaint, and probably substantiated by his evidence, he did this measurably under protest, and declined to accept it in full payment, but only on account of the $1,699 which he claimed; delivered a written protest to the association wherein he insisted that he

took the sum tendered under protest and refused to release the association from the payment of the further sum of $212.40, which would be the withdrawal value if the twelve and one half per cent was not deducted.  He took the check however, received the money, and applied it to his own purposes and then brought this suit to recover the difference. In the complaint he charged that there was posted in the office of the association from time to time and varying from month to month, according to the financial condition of the association, printed notices of the withdrawal values of the stock, and he introduced in evidence, the withdrawal values of his series as they were posted from May to October, which in general terms simply said, using the May notice as an illustration : " Withdrawal value of series C, $77.36 1-6 ; with May dues paid, $78.78." For the other months the value was stated in substantially the same form, and the whole notice was a printed one which stated the values of the various series of stock which the association had issued.  There was no evidence produced by the plaintiff to show that this was the withdrawal value of the stock, other than this printed notice.  The complaint charges that the board of directors caused these to be printed, and that in fact, these were the actual withdrawal values, but it nowhere appears in the complaint by actual statement and negation that the association had suffered no losses, and that by reason of the actual value of the stock the company was under legal obligation to return to the member the full sum which he claimed.  The answer denied that these withdrawal notices were posted by direction of the board, or that they were authorized by resolution, nor does the plaintiff anywhere state that the board having investigated the condition of affairs of the company by resolution had directed that the withdrawal value of the stock should be the sum named in the notice which he produced. He alleges that this resolution of the board of October 2, 1893, was null and void as to him, though he does not state that in point of fact the company had not sustained the losses which justified the deduction of that percentage, nor on the .

other hand did he produce any evidence whatever to show that either of these things were true, and that the resolution was not justified by the actual financial condition of the company. Plaintiff and appellant assumes that he had no burden in this respect, and that he has a right to recover the withdrawal value according to the posted statement and as his rights existed in May when he gave notice. It is assumed and contended that the giving of the notice fixed the rights of the members and the association; that the posting of the notice in the office of the company without proof that it was directed by the board, was enough to entitle him to recover. This must be so, because he offered no proof respecting the source or origin of these notices, and the answer put in issue the general allegation that they were posted by the authority and direction of the board, and were the result of corporate action.

The nonsuit was manifestly right. The appellant has vigorously argued and with some ingenuity and force on the basis of the doctrine of English cases, that when a member has given notice of withdrawal, his right thereupon and thereby becomes fixed and the board is bound to pay the amount which they may have declared to be the sum due the member, and they cannot afterwards alter the status of the stock and escape from the obligation. Considerable support for this doctrine can be found in the English authorities, but as we look at the case this question is not directly before us, and we are not called on to determine whether we should follow that line of adjudication or the doctrine which is expressed in the great bulk of American decisions. The cardinal vice in the appellant's contention is that his record presents no case to which these authorities can be accurately and justly applied. As has already been suggested there is no averment in the pleading which is admitted by the answer, and there was no proof offered by the plaintiff in support of the proposition, that the board of directors had by a resolution duly adopted which would be binding on the company or on which the member had a right to rely, fixed the value of these series

of stock at the time of the notice. Apparently the withdrawal
values in this general way were printed and posted in the
office, and whether under circumstances different from those
presented by the present case, if the shareholder had been
misled the corporation would be estopped to contradict it, or
whether in case the plaintiff had established the fact that the
board had fixed this value by actual resolution sufficient in.
form and substance it would have concluded the corporation,
we need not determine. This relieves us from an exhaustive
analysis and discussion of the rights of withdrawing members
under peculiar conditions, and we need only refer in the most
general way to the authorities which bear on the question.
These associations are somewhat modern in this country, and
yet they have received at the hands of strong law writers and
able courts, very much consideration, and the cases are cited.
Endlich on Building Associations, chap. 6; Thompson on
Building Associations, chap. 8; *Eversmann v. Schmitt*, 53
Ohio St. 174; *Hohenshell v. The Home Savings & Loan Assn.
et al.*, 41 S. W. Rep. 948; *Wohlford v. The Citizens' Building,
Loan & Savings Assn.*, 140 Ind. 662; *Chapman et al. v. Young*,
65 Ill. App. Rep. 131; *Rabbitt v. Wilcoxen et al.*, 72 N. W.
Rep. 306; *Christian's Appeal*, 102 Pa. St. 184; *Brown v.
Saunders et al.*, 20 D. C. Rep. 455; *Decatur Building & In-
vestment Co. v. Neal*, 97 Ala. 717.

These with many others illustrate the general principles by
which the rights of the parties are to be measured. We only
refer to them not because the decision is rested on them, but
because by the principles which are therein determined our
conclusion on the record is entirely justified. As the cases
put it, these are mutual benefit organizations, and are neither
in the fullest extent corporations nor partnerships. Undoubt-
edly they partake of the elements of both, and we must look
to the law applicable to each in order to determine whether
or not the plaintiff had a right to recover. He was bound to
show that he was entitled to get judgment against the asso-
ciation for a greater sum than it paid him. He accepted their
check. It is true he did it under protest, but that is of little

avail, though we do not determine whether this would of itself be enough to preserve his rights when he took a check and applied it to his own benefit. To meet this requirement it was not enough for him to allege that the company passed a resolution subjecting the withdrawals to a reduction of twelve and one half per cent without right, but he was bound to both allege and prove that the value of his stock at the time was the sum which he claimed, and this he must do either by direct proof on the subject, or by the production of corporate records and proof of corporate action which would as against it, establish the fact. It might be if he had simply alleged the withdrawal value, the giving of the notice, the determination by the board that such was the value, and he had produced the notices and proved that they were posted by the authority of the board, that he would have made out a case, and the burden would have shifted to the association to show the losses. All we hold is, that under the issue as he tendered it, and as it was accepted he was bound to do either one of two things, if not both. These are to show that the notices were posted under the authority of the board, and that the board had determined the values therein expressed to be the withdrawal values, and that no losses had been incurred. Whether the first would have been enough to have shifted the burden, we do not decide. As the cause of action was stated, and as he tendered the issue and the company accepted it, he was evidently bound to do both, or at least he was bound to offer proof enough to shift the burden.

Another important consideration is that after he gave his notice of withdrawal in May, he did not cease to be a member of the association. This is put not on the ground of the effect of the notice, or a denial of the legal result of a notice properly given, or a determination of what the rights of a withdrawing number are on notice given and no subsequent thing done by him which would take us into disputed territory, but upon the simple fact that Hawley did not rely on his notice of withdrawal, but continued his membership, paid his monthly dues and charges until the month of October

when the board sent him a notice that they were ready to pay him. We are quite of the opinion that since Hawley continued his membership with the association, and continued to pay his monthly dues and did not rely on his notice of withdrawal, he was still bound by whatever action the officers who represented him, as well as the other members of the corporation might properly do in the management and transaction of the business of the company. This of course brings us to the resolution of October 2, of which he was advised on the 14th. By that, we are told the company had sustained losses to the extent of twelve and one half per cent. Just how far the plaintiff would have been bound by that resolution under other circumstances we need not inquire. Had he plead his withdrawal, stated its value, and the company had then pleaded the resolution, they would have been bound to show these losses. The plaintiff himself pleaded the resolution, but simply stated that it was null and void as to him. This evidently is not true. The plaintiff by virtue of the mutuality, which is the controlling principle of all these organizations, as well as by the provision of the by-law to which he subscribed, and to which his rights were subject, was only entitled on withdrawal to the actual value of his stock. According to the provisions of section 1, article 22, as originally adopted, as well as by the same article as amended, he was only entitled to receive the money he had paid after deducting all fines and arrearages, together with a fair proportion of all losses and expenses. This was the agreement between Hawley and the other members of the association, as well as between Hawley and the company entity itself. We find upon looking into the English cases that the by-laws or rules of the association are the measure of the member's rights, and furnish the details and provisions of the contract entered into between the company and its members and between the members themselves, and that their rights are to be measured and determined by the contract thus ascertained. We do not discover that the American cases at all disagree with this general principle in the absence of charter conditions or

legislative enactments, which may in some manner affect it. Looking then to the contract of the plaintiff, we find he is only entitled to recover the amount actually paid in with the interest specified, subject to deductions for all fines and charges, as well as a due proportion of the losses. This is the agreement by which he is bound, and when he brings an action against the association it is manifest he must establish that within these limitations he has a right of action. As it was very aptly and strongly put in a late English case, *Auld v. Glasgow Working Men's Building Society*, 12 Law Reports, Appeal Cases, 197, the contract between the parties is to be judged by ordinary rules, and the association has the same rights under its contract as though it had been made with a stranger. As Lord Bramwell put it, "it seems to me so utterly wrong, when people have entered into a defined bargain, that it should be set aside upon some more or less fanciful notion of equity or right, that I will not discuss it. I will say, 'hold to your bargain.' I suppose the proverb is as true in Scotland as it is in England, and true universally, that a bargain is a bargain, as the Lord Chancellor has said, and should be observed." When it is applied to the present case it is particularly apt and forcible. When the plaintiff became a member of the association and a subscriber to its stock, he agreed both with the company and his fellow members, that if he gave notice to withdraw he should be entitled to receive the amount actually paid in, plus the interest, less all fines, charges and arrearages, and a fair proportion of all losses and expenses. This being his agreement he must abide by it, and he may not recover under existing conditions any more than a sum which must be measured by the amount paid in and interest, less these items. He failed to show that there were no losses or expenses, but he did plead that the board of directors had declared that the association had suffered losses which reduced the value of his stock twelve and one-half per cent, and he neither attacked that resolution by offering proof to the contrary or any proof on the subject, nor by the production of proof of any corporate act which bound the

association or his fellow members, or operated as an estoppel in his favor. Since his proof was not sufficient in this particular, and the case is wholly unaided by the pleadings, and the issue is not so framed as to shift and put the burden on the company to establish these facts, we are quite of the opinion the court was right in nonsuiting the plaintiff, and the judgment entered thereon will accordingly be affirmed.

*Affirmed.*