## ALDRICH v. GRAY.

(Circuit Court of Appeals, Sixth Circuit.   July 31, 1906.)

### No. 1,513.

1. BUILDING AND LOAN ASSOCIATIONS — WITHDRAWALS — EFFECT OF INSOLVENCY.

A building and loan association was organized under the statutes of Michigan (Comp. Laws 1897, c. 206), which provide that "any stockholders wishing to withdraw from the said corporation shall have the power to do so by giving thirty days' notice in writing at a stated meeting of his or her intention to withdraw, * * * but payments of the stock so withdrawn shall only be due when the funds applicable to the demands of withdrawing stockholders are sufficient to meet and liquidate the same." The association became in fact insolvent, but continued to do business in that condition, although regular meetings of the directors were not held, and the officers, except the secretary, ceased to perform their duties, devolving upon him practically the entire management of its business and control of its funds. While in such condition a stockholder effected a withdrawal through the secretary, and received payment of his stock without any notice having been given at a stated meeting and when the association had no funds lawfully applicable to withdrawals. *Held*, that such withdrawal was without authority and ineffective, and could not be validated by a subsequent ratification by the directors, the conditions on which a withdrawal could be made not then existing, and that the amount so received was recoverable for the benefit of all of the stockholders.

[Ed. Note.—For cases in point, see vol. 8, Cent. Dig. Building and Loan Associations, § 16.]

2. SAME—ACTION BY RECEIVER.

A receiver appointed for an insolvent building and loan association, when authorized by the court, may maintain an action against a stockholder to recover a fund unlawfully withdrawn by him, and which rightfully belongs to the association for distribution among all of its stockholders.

Appeal from the Circuit Court of the United States for the Eastern District of Michigan.

D. Forest Paine, for appellant.

J. C. Harper and Jay W: Curts, for appellee.

Before LURTON, SEVERENS, and RICHARDS, Circuit Judges.

SEVERENS, Circuit Judge.   The bill in this cause is a dependent bill filed by the complainant as receiver by direction of the court in a cause therein pending in which Edward W. Bishop was complainant and the Michigan Savings & Loan Association and George Lord were defendants, and the object of which was to wind up the affairs of the said association as an insolvent corporation.   The bill in the original cause was filed March 30, 1901.   Aldrich, the complainant in this dependent bill, was appointed receiver April 11, 1901, and was directed "to take possession of all the property, rights, securities, moneys, books, choses in action and assets of said association, and to collect and reduce the said assets to cash; and to that end, upon being directed or permitted by the court, to bring such suits as might be necessary to

collect the same." The parties defendant to the present bill were some of them persons who had been, or were at the time of filing the bill, directors or other officers of the association. Against these defendants charges of mismanagement and willful violation of duty or culpable neglect in the conduct of the affairs of the association, whereby it "became insolvent early in its career and its capital wasted and lost," were made. The other defendants had been stockholders or held other relations with the association, and it is alleged connived at such misconduct in the management of the association and profited thereby to the prejudice of the association. One of such stockholders was George H. Scripps, of whose estate the defendant, Gray, is administrator; and as his relation to and transactions with the association are the subject of the present controversy, we do not extend the narrations of the bill beyond the matters now involved.

The association was incorporated under chapter 206, Comp. Laws Mich. 1897, entitled "Building and Loan Associations," and began business about October 18, 1889, with an authorized stock of $25,000,-000 in shares of $100 each, and continued its operations until April 11, 1901, the date of the appointment of the receiver. Its stock was of three kinds, termed "installment," "paid-up," and "fixed dividend" stock. The first two of these classes shared in the profits. The third received interest only at 7 per cent. in the form of fixed dividends. The business was for a time apparently prosperous. On June 30, 1896, a date about contemporaneous with the investments of Scripps, the active stock, for which the association was liable amounted in all kinds to $655,800, of which $122,600 was fixed dividend stock. On the dates following Scripps applied and paid for fixed dividend stock in the amounts mentioned and received certificates therefor:

| | | |
|---|---|---|
| 1896—February. | One for | $2,500 00 |
| 1896—December. | One for | 4,000 00 |
| 1897—February. | One for | 7,000 00 |
| 1897—February. | One for | 2,000 00 |
| | One for | 1,500 00 |
| Total | | $17,000 00 |

The terms of the certificates were:

"(1) An acknowledgment by the association of the payment of the par of the shares, and an agreement to repay the money on or before five years from the date of the certificate.

"(2) An agreement on the part of the association to pay dividends semi-annually on the surrender of the coupons attached.

"(3) That the shares should be nonassessable.

"(4) That the shares should be payable when the last coupon was due.

"(5) That the shares might be retired by the directors in the inverse order of issue.

"(6) That the stock should be subject to the same limitations as other withdrawals under the law; and that interest at the rate of —— per cent. per annum should be allowed in lieu of dividends for the period elapsing since the preceding semiannual dividend up to date of notice of withdrawal, provided, that a reduction of five dollars per share should be made for shares withdrawn within six months of date of issue."

After Scripps took his stock, he received interest in the way of dividends, how much does not very clearly appear. By section 6 of its charter provision was made in regard to withdrawals of stockholders as follows:

"Any stockholder wishing to withdraw from said corporation shall have the power to do so by giving thirty days' notice in writing at a stated meeting of his or her intention to withdraw, when he or she shall be entitled to receive the amount paid in by him or her, and such interest thereon or such proportion of the profits as the by-laws may determine, less all fines or other charges; but payments of the stock so withdrawn shall only be due when the funds applicable to the demands of withdrawing stockholders are sufficient to meet and liquidate the same, and then only in the order of the respective times of presentation of the notices of such withdrawals; provided, that at no time shall more than one-half of the funds of the treasury of the corporation be applicable to the demands of the withdrawing stockholders without the consent of the board of directors."

The by-laws did not, as they could not, essentially vary these conditions. The financial condition of the association was growing worse at the times when Scripps became a stockholder, and it was apparently nearing, if it had not already reached, an insolvent condition. This, it is alleged, was the result of the mismanagement, neglect of duty, and the unauthorized and unlawful proceedings of its governing and administrating officers, which are detailed in the bill. It began borrowing considerable sums of money. The board of directors, though required to hold monthly meetings, rarely met. The president, vice president, and treasurer did not perform the duties pertaining to their offices, and left substantially the whole management of the association and the control of its funds to the secretary. But the association kept on doing business in an insolvent condition and in the same disorderly way until the filing of the bill to wind it up. In August, 1897, Scripps began to withdraw his stock from the association and continued his withdrawals from time to time thereafter. The dates and amounts withdrawn were as follows:

| | |
|---|---:|
| 1897—August | $2,500 00 |
| 1898—January | 4,000 00 |
| 1898—April | 2,000 00 |
| 1898—June | 7,000 00 |
| | 1,500 00 |
| Total | $17,000 00 |

As will be seen these amounts correspond with his several subscriptions. These withdrawals were effected with the secretary, from whom he received of the funds of the association the par amount of his shares and to whom he surrendered his certificates. None of the shares had matured, there were no funds in the treasury applicable to the demands of withdrawing stockholders, the association was insolvent, as already stated, and no written notice of withdrawal had been given at a stated meeting as required by the statute, or, so far as appears, to any one. It does not appear that Scripps made any attempt to secure a meeting of the board of directors. Upon this state of facts the main question in the case arises, whether his attempted withdrawal

and his perception of the funds of the association were respectively valid and lawful.

With respect to the course taken by him to effect his withdrawal it is to be observed that his relation with the other stockholders of his class were mutual, and no one more than another was responsible for the misfeasances and neglect of duty by the officers of the association, and a serious question arises whether he could avail himself of their desertion of their duties as a sufficient reason for his neglect to take such steps as would enable him to give his written notice of withdrawal to the board of directors. The statute evidently devolves upon the board the exercise of certain duties for the protection of other stockholders, and the action of the board is made a condition of the right to withdraw. But if it were held that, in the circumstances stated in regard to the method of conducting the corporate affairs, the intervention of the board was not absolutely essential, still if the conditions were such that Scripps was not entitled to withdraw, so that, if the board were present to act upon his notice, the withdrawal could not have been lawfully permitted, the question of the sufficiency of his method of procedure becomes immaterial. For in such case the essential conditions of his right did not exist.

The current of decisions in this country in regard to this subject seems to be that, when insolvency supervenes in the status of such associations, the right of withdrawal which before existed is suspended, in the absence of some express provision to the contrary. This is the result of the mutuality of the stockholders and the equity of equality, which is of the essence of their relation to each other. If it were otherwise, and the stockholders could at will successively take their investment out and desert the failing enterprise, those remaining would have to bear the brunt of the joint misfortune. Endlich on Build. & Loan Associations, §§ 108, 514; Coltrane v. Baltimore B. & L. Association (C. C.) 110 Fed. 281; Id., 113 Fed. 785, 51 C. C. A. 457; Christian's Appeal, 102 Pa. 184; Hohenshell v. Sav. & L. Association, 140 Mo. 566, 41 S. W. 948; Gibson v. Association, 170 Ill. 44, 48 N. E. 580, 39 L. R. A. 202; 6 Cyc. 130.

The English cases seem to accord the right of removal so long as the association is a going concern, and not to restrict the right upon the fact of its insolvency. Apparently this course of decision is founded upon the provisions of the English statutes regulating the subject. At all events we think the American doctrine is founded upon the clearer equity.

But it is contended that the association ratified the action of the secretary in permitting the withdrawal, and the following resolution of the board of directors is cited to show the ratification:

"Meeting of the board of directors of the Michigan Savings & Loan Association, held at the office of the association May 20, 1898, at 11 a. m. Present: Directors Clark, Ives, Hancock, and Wemple. Resolved, that, owing to the failure of the members of this board to meet for consultation, it has become necessary for the president and secretary to conclude certain transactions, such as discharging mortgages and acceptance of drafts, etc., and being apprised of these transactions, we hereby ratify the same to date."

It is contended for the appellant that this does not purport to be a ratification of the action of the secretary in the matter of Scripps' withdrawal, and, moreover, that the withdrawal could not be effected .in this way in view of the statutory conditions. We do not, however, think it necessary to decide the question upon the method of procedure. The board could not by ratification accomplish what it would not have been authorized to do originally. As we have already shown, the conditions prescribed by the statute permitting withdrawals did not exist, and it would have been a distinct violation of the law for the board to have sanctioned it.· And we think our decision might well rest upon this ground.

It is further objected that the receiver is not the proper party to bring the suit, and that if there was any cause of action it belonged to the stockholders who were injured. But the fund sought to be recovered belonged to the association, and not to the stockholders. When recovered, it would be in its possession for distribution to the stockholders. The court directed the receiver to take possession of the assets, ·among them the choses in action of the association, and to bring such suits as were necessary for their recovery; and it directed the receiver "to file this bill, and prosecute the suit thereon in his own name." We think there is no sufficient ground for the objection regarding parties.

The decree of the Circuit Court must be reversed, with costs, and the cause remanded, with directions to overrule the demurrer and permit the defendant to answer the bill and to take further proceedings in due course.