Chapman v. Young.

# John W. Chapman et al. v. Miles K. Young, Receiver.
## Cobe & McKinnon v. Same.
## E. G. Howell v. Same.

1. BUILDING AND LOAN ASSOCIATION—*Of what Insolvency Consists.*— The fact that at the date of a notice of withdrawal by a member the liabilities of the association to its shareholders were in excess of the value of its assets, constitutes an insolvency in the case of building and loan associations.

2. SAME—*The Right to Withdraw.*—The right of withdrawal from such institutions is not conferred upon members for the purpose of enabling them to escape their proportionate responsibility for losses incurred by insolvent associations, but for the purpose of securing to each member the privilege of withdrawing his proportionate share of the accumulated funds.

3. SAME—*The Right of Withdrawal Not to be Used for Obtaining Unjust Advantages.*—The right of withdrawal from a building and loan association can not be used for the purpose of obtaining an unjust advantage over the fellow stockholders of the withdrawing member.

4. SAME—*No Withdrawals after Insolvency.*—The right of withdrawal can not be exercised after an association has been judicially de-

clared insolvent and a receiver appointed. The condition of insolvency is incompatible with the right of any member to withdraw his contribution to the general fund until his proportion of the losses has been ascertained and adjusted.

5. SAME—*Insolvency—Basis of Distribution.*—Where a building and loan association is declared insolvent and a receiver appointed, the basis of distribution is not necessarily that provided by the by-laws in the regular course of business of a solvent society. The principles of equality and mutuality must prevail and control.

6. SAME—*The Purpose of By-Laws.*—The by-laws of a building and loan association are enacted for the government of a solvent, going association and of necessity must cease to have operation or effect when the association is no longer able to continue the transaction of the business for which it was created.

7. SAME—*Funds—How to be Administered.*—The funds of an insolvent building and loan association should be administered by the court as between stockholders upon principles of equality and to the end that all members bear equally and mutually their just proportion of the losses sustained in the course of the life of the society.

8. SAME—*Withdrawal Not Affected by Judgment.*—The spirit of the right of withdrawal is that the withdrawing member should receive his just proportion of the fund of the association and no more, and the court should not award more to him. The claim of such member is not altered by the fact he obtained a judgment upon his notice of withdrawal. He remains a claimant upon the ground of stock interest and is to be treated as a member in the distribution of the funds.

9. SAME—*Judgments upon Notices of Withdrawal—Executions.*—Though judgments may be obtained against an association by members upon notices of intention to withdraw, yet the collection of such judgments will be controlled by courts of equity.

10. SAME—*Purpose and Intent of the Privilege of Withdrawal.*—The purpose and intent of the privilege of withdrawal, being to enable a stockholder to withdraw his just proportionate part of the funds of the association, the fact that such member believed the association to be solvent when he gave his notice can not entitle him to more than such proportion of the assets of the association.

11. SAME—*Where the Stockholders Should Bear Burdens Ratably.*—Where no stockholder more than another is shown to be chargeable with the responsibility for losses all should bear the burden of the failure ratably, as they would have shared in profits had the enterprise been successful.

12. SAME—*Fees for Transfers by Receiver.*—Where a receiver is appointed for a building and loan association, it is proper for a court to provide that he shall be entitled to a fee for transferring shares upon the books of the association. Generally such duty devolves upon the receiver, in the discharge of which the members generally have no concern or interest, and it is but just to them that the additional expense of dis-

charging such duties should be defrayed by the person in whose behalf such transfers are made.

**Bill for the Distribution of the Funds of a Building and Loan Association.**—Appeal from the Circuit Court of McLean County; the Hon. ALFRED SAMPLE, Judge, presiding. Heard in this court at the November term, 1895. Affirmed. Opinion filed May 16, 1896.

### STATEMENT OF THE CASE.

Appeal from decree of the Circuit Court of McLean County entered in the matter of receivership of the Illinois Building and Loan Association.

LIVINGSTON & BACH and J. J. MORRISSEY, attorneys for John W. Chapman et al. and E. G. Howell, appellants, contended that appellant was a creditor of the association with a right to enforce his claim against it by legal process. U. S. Building and Loan Association v. Silverman, 85 Pa. St. 394; Holyoke Building and Loan Association v. Lewis, 27 Pac. Rep. 872; In re Blackburn and District Benefit Society, 24 Ch. Div. L. R. 421; Hennighausen & Wolf, receiver, v. August Tischer, 50 Md. 583; McKenney v. Diamond State Association, 18 Atl. Rep. 905; Englehardt v. Association, 25 N. Y. Supp. 835; Towle v. American Building Association, 61 Fed. Rep. 447; The Granite State Provident Association v. Lloyd, 145 Ill. 620.

As a creditor of said association he is entitled to receive his judgment in full and the costs of suit, before any distribution of the assets is made to the members who are his judgment debtors. Barnard v. Thompson Eng. L. R. (1894) 374; In re Blackburn and District Benefit Society, 24 Ch. Div. L. R. 421.

In re Mutual Society, 24 Chy. Div. Eng. L. R., 435, note. Walton v. Edge, 10 Appeal Cases, 33; Murray v. Scott, 9 Appeal Cases, 519; In re Sheffield, etc., Society, 22 Q. B. Div. 470.

Insolvency of the association does not affect the rights of this appellant. His judgment was rendered before any one knew that it was insolvent and before winding up proceedings had been commenced. Barnard v. Thompson, 1 Eng. L. R. (1894) 374.

" No principle is better settled than that a judgment establishes in the most conclusive manner the sum due upon the claim sued upon." Ries v. Rowland, 11 Fed. Rep. 657; Cooksey v. K. Cy. R. R. Co. 74 Mo. 477.

It matters not how erroneous the judgment may be, it is conclusive between parties until reversed or set aside. Jenkins v. International Bank, 111 Ill. 462; Chicago, Burlington & Quincy Railroad v. Nation, 113 Ill. 195; Maloney v. Dewey, 127 Ill. 395.

Every cause of action when recovery is had thereon is merged in the judgment, which thereafter represents the rights of the parties. Boynton v. Ball, 105 Ill. 627.

A court of equity will not go behind a judgment of a court of law not obtained by fraud, accident, or mistake, when the court rendering the judgment had jurisdiction of the subject-matter and the parties. Buckmaster v. Grundy, 3 Gil. (Ill.) 626.

J. E. & MAYNE POLLOCK and COBE & McKINNON, attorneys for appellants, contended that members of a building society whose rules give them the privilege to withdraw, and who have perfected such notices of withdrawal, cease to be members of said association and become creditors with rights in the funds of said association, secondary only to the rights of the general outside creditors. United States B. & L. Ass'n v. Silverman, 85 Pa. St. 394; O'Rourke v. The W. Penna. B. & L. Ass'n, 93 Pa. St. 308; Wetterwoulgh v. The Knickerbocker B. & L. Ass'n, 3 Bos. (N. Y.) 381.

Constitution and by-laws of a building society regarding the withdrawal of members must not be confined to the society as a going concern, but are applicable to adjust the rights of withdrawing and continuing members among themselves.     That members who have withdrawn from the association before said association had been begun to be wound up, are entitled to payment out of the funds of said association in preference to members who did not give notice of withdrawal. In re Blackburn, etc., Society, 24 L. P. Chy. Div. 421; In re Mutual Society, 24 L. R. Chy. Div. 425;

Walton v. Edge, 10th Appeal Cases 33; Murry v. Scott, 9th Appeal Cases, 519; Middlesburgh v. Society, L. T. 203; In re Sheffield Society, 22d Q. B. Div. 470; McKinney v. Diamond State Ass'n, 18 Atlantic Rep. 90; Bergman v. St. Paul Ass'n, 13 N. W. Rep. 120; State v. Red Falls Ass'n, 47 N. W. Rep. 540.

KERRICK, SPENCER & BRACKEN, attorneys for appellee. There are two distinct and complete defenses to this appeal:

First. There were no funds applicable to the payment of these withdrawals when the notices of withdrawal matured.

Second. Had there been funds applicable, the association was insolvent at the time the notices matured, and therefore petitioners can have no preference or priority over shareholders not giving notice of withdrawal.

The statute relative to building and loan associations provides that "at no time shall more than one-half of the funds of the treasury of the association be applicable to demands of withdrawing stockholders without the consent of the board of directors." Hurd's R. S., Chap. 32, Sec. 83.

The directors can only act as a board. 1 Morawetz on Private Corporations Sec. 531.

When the rules of a building and loan association limit the demands of withdrawing shareholders to a specified fund, and at the time and after notice of withdrawal mature there are no moneys in that fund, such notice gives no preference or priority over shareholders not giving notice. Heinbokel v. National Saving, Loan, and Building Ass'n, 59 N. W. Rep. 1050; Texas Homestead, Building and Loan Ass'n v. Kerr, 13 S. W. Rep. 1020; In re Mutual Society, reported with In re Blackburn and District Benefit Society, 24 Ch. Div. L. R. 425.

The insolvency of a building and loan association puts an end to its operations as a building association. To a certain extent, also, it ends the contract between it and its members respectively, and nothing remains but to wind it up in such a manner as to do equity to creditors and be-

tween the members themselves. Strohen v. Franklin Savings and Loan Association, 115 Pa. St. 273; Callahan's Appeal, 124 Pa. St. 138.

The order prescribed by the by-laws of a building association for the payment of money out of its treasury to the different classes of members in the regular course of business does not apply to the distribution of its assets when insolvent. Crisswell's Appeal, 100 Pa. St. 488; Everman v. Schuett, 24 W. L. D. 56; Hineman v. Ryan, 3 O. C. C. 509; Knoblauch v. Robt. Blum, etc., Association, 25 Pitts. L. J. 39; Poffert v. Robt. Blum, etc., Association, 25 Pitts. L. J. 40.

When a building and loan association has become insolvent, in winding up its affairs, after deducting expenses incident to the administration of its assets, the general creditors, if any, should be first paid in full and the residue of the funds should be distributed *pro rata* among those whose claims are based on the stock of the association, whether they have given notice of withdrawal of their stock or not. Both claims are equally meritorious, and in marshaling the assets, neither class is entitled to priority over the other. Appeal of Christian et al., 102 Pa. St. 184; In re Mutual Society, 24 Ch. Div. L. R. 425; Texas Homestead Building and Loan Association v. Kerr, 13 S. W. Rep. 1020; Heinbokel v. National Saving, Loan and Building Ass'n, 59 N. W. Rep. 1050; In re Sutherland, 24 Q. B. L. 394.

MR. JUSTICE BOGGS DELIVERED THE OPINION OF THE COURT.

The Illinois Building and Loan Association, upon the application of the attorney-general of the State, was placed in the hands of a receiver on the 2d day of October, 1894.

The Circuit Court of McLean County, at its October term, 1895, entered a decree providing for the disposition of the funds of the association in the hands of the receiver, from which appeals were prosecuted by the appellants in the above styled causes.

In this decree the court, among other things, directed the receiver to proceed as follows :

First. The receiver shall retain sufficient of the funds in his hands to provide for the payment of creditors whose claims are pending before the master in chancery, and for current expenses.

Second. The residue, as soon as may be, the receiver shall distribute, *pro rata*, among all the shareholders, irrespective of notices of withdrawal, as follows: The principal sum, upon which dividends shall be paid to the several shareholders, shall be the total amount of monthly installments paid by the several shareholders, with six per cent interest on the several installments, computed according to the average time of the monthly payments, from date of payment to October 2, 1894.

Third. Borrowing shareholders shall be credited with the amount of dividends payable upon their shares when they make repayment of their loans, but the credit shall be as of the date when dividends are paid to non-borrowing shareholders.

Fourth. The receiver shall only pay dividends to persons who appear, by the stock-books of the association, to be the owners of the shares upon which the dividends are paid. The charge for transferring shares upon the books shall be twenty-five cents for each certificate of share.

Fifth. Dividends shall only be paid upon presentation of the certificate, or certificates of shares, to the receiver at the time of payment, for indorsement or credit thereon of the amount paid.

The appellants were stockholders, who, more than thirty days before the appointment of the receiver, had given notices of their intention to withdraw their membership, in accordance with the following by-laws of the association, viz.:

Sec. 7. Any member whose shares are in good standing may withdraw at any time, after giving thirty days notice of the intention to withdraw. Withdrawing shares shall be credited with six per cent simple annual interest on all money paid on such shares into the loan fund. After four years withdrawing members shall receive the full book value of

their stock. The appellant Howell, on the 18th day of September, 1894, obtained judgment against the association for the full book value of his shares.

The objections preferred against the decree are:

1. That the court erred in refusing to order the receiver to pay the judgment in favor of Howell, and the amounts which, under the by-laws, would be due the appellants as withdrawing stockholders before paying anything to the holders of other shares of stock.

2. That the court erred in ordering interest to be paid upon stock issued more than two years prior to the appointment of the receiver.

3. That the court erred in ordering that payments to shareholders should only be made upon presentation of the certificate of stock.

4. That the court erred in fixing a fee of twenty-five cents for transferring each certificate of shares of stock upon stock books to be kept by the receiver.

It was stipulated upon the trial in the Circuit Court that " at the date of each of said notices of withdrawal and ever since, the liabilities of the association to its shareholders were and have been, and now are in excess of the value of its assets."

This constitutes insolvency in the case of a Building and Loan Association. Towle v. Building L. Society, 61 Fed. Rep. 477.

The appellant Howell, in his petition praying the court to accord preference to his judgment, stated that "at the time when his notice of withdrawal was given and when it matured, the association was, and still is, insolvent."

The rights of members of such associations who had given notice of their intention to withdraw their stock in the funds of associations afterward found to be insolvent, has been the subject of much discussion by text writers and of conflicting decisions of courts of last resort in England and the United States.

The courts of review of our State have not, so far as we are advised, been called upon to pass upon the question, and

we must therefore dispose of it upon principle rather than upon precedent.

The right of withdrawal, which is a peculiar feature of such institutions, is not conferred upon a member for the purpose of enabling him to escape his just proportionate responsibility for losses incurred by an insolvent association, but for the purpose of securing to each member the privilege of withdrawing his proportionate share of the accumulated funds.

It would be to pervert the privilege to allow it to be used for the purpose of obtaining an unjust advantage over the fellow stockholders of the withdrawing member, a result that would inevitably follow withdrawal from insolvent societies.

No one would contend the right could be exercised after an association has been judicially declared insolvent and a receiver appointed, for the condition of insolvency is incompatible with the right of any member to withdraw his contribution to the general fund until his proportion of the losses has been ascertained and adjusted.

In our view it is equally unreasonable to insist a member who, prior to such declaration of insolvency, but while the condition of insolvency in fact existed, gave notice of his intention to withdraw, should be deemed by the courts entitled to receive from the receiver out of the general funds more than his just proportion of the assets of the society.

In such cases the basis of distribution is not that provided by the by-laws in the regular course of business of a solvent society, but the principles of equality and mutuality must prevail and control.

The by-laws of an association are enacted for the government of a solvent, going association, and of necessity must cease to have operation or effect when the association is no longer able to continue the transaction of the business it was created to transact.

The funds of an insolvent association should be administered by the court as between stockholders upon principles of equity, and to the end that all members should equally

and mutually bear their just proportion of the losses sustained in the course of the life of the society. The spirit of the right of withdrawal is that the withdrawing member should receive his just proportion of the fund of the association, and no more, and the court should not award more to him.

In support of the general doctrine here announced consult Endlich on Building Associations, Secs. 514 and 515; Thompson on Building Associations, page 67, Sec. 12; In re Christian's Appeal, 102 Pa. St. 184.

Nor is the position of Howell different from that of the other appellants.

The character of his claim is not altered by the fact he obtained a judgment upon his notice of withdrawal.

He remains a claimant upon the ground of stock interest and is to be treated as a member in the distribution of the funds.

Though judgments may be obtained against an association by members, upon notices of intention to withdraw, yet the collection of such judgments may be controlled by courts of equity.

Upon this point it is said in Endlich on Building Associations, Sec. 112: "The execution may be stayed temporarily if proper equities are shown, or permanently, where it turns out the association was insolvent at the time of the actual withdrawal."

It is urged in support of the appellants' alleged right of preference over other stockholders that the appellants were assured by the officers of this association, that the society was solvent at the time they gave notices of their desire to withdraw.

The officers then represented the appellants as fully and as rightfully as they did the other stockholders, and no reason is perceived why the other stockholders should be answerable to the appellants for the representation of officers who were the official agents of the appellants as fully as other holders of stock.

The purpose and intent of the privilege of withdrawal

Chapman v. Young.

being to enable a stockholder to withdraw his just proportionate part of the funds of the association, the fact a withdrawing member believed the association to be solvent when he gave his notice, could have no effect to entitle him to a decree awarding him more than such proportion of the assets of the concern of which he was a member.

The order of the court fixing the principal sum upon which dividends to stockholders should be computed at the total amount of monthly contributions of the stockholders to the general fund, together with interest, according to the average time of payment of the contributions, seems to us equitable. The fund to be distributed is composed of such contributions and the increment thereof, less the losses sustained in the prosecution of the business of the association.

No one stockholder more than another is shown to be chargeable with responsibility for losses, and in the absence of such showing all should bear the burden of the failure ratably, as they would have shared in profits had the enterprise been successful.

It was entirely proper, for the protection of the receiver, and to the end that dividends should be paid to the parties entitled to receive them, that the court should make some order relating to the course of procedure in making payment of the dividends.

To accomplish this the court decreed that dividends should be paid only to persons who appeared by the stock books of the association to be holders and owners of stock.

In order that such holders might sell and dispose of their stock interests, pending the proceedings in court in the matter of settling the affairs of the association, it became necessary provision should be made for the transfer of shares upon the stock book by the receiver.

This devolved duties upon the receiver, in the discharge whereof the members generally of the association had no concern or interest, and it was but just to them that the additional expense of discharging such duties should be defrayed by the person in whose behalf the transfers were made.

This consideration warranted the court in establishing a reasonable charge for transferring shares upon the books, so the only question remaining as to that point is whether the charge of twenty-five cents per certificate is reasonable.

It is not contended there is any proof in the record tending to show the charge is unreasonable and there is no ground apparent to us for declaring it to be so.

The decree is affirmed.