## Canadian-American Loan & Building Association et al. v. C. J. Quimby.

1.  BUILDING AND LOAN ASSOCIATIONS—*Insolvency—Exchange of Assets for Liabilities.*—The practice of exchanging or trading the assets of an insolvent building and loan association in satisfaction of its obligations or of canceling its stock by a transfer of assets to the holder should not be permitted in equity when such practice involves the acceptance of stock fraudulently issued in payment for such assets.

106     APPELLATE COURTS OF ILLINOIS.

VOL. 79.] Canadian-American Loan & Building Ass'n v. Quimby.

2.  SAME—*Status of Withdrawing Stockholders.*—The doctrine that a withdrawing stockholder becomes thereby a creditor of the association entitled to sue, as upon a simple contract claim, does not apply to a stockholder of an insolvent association.

Appeal, from an interlocutory order granting an injunction entered by the Superior Court of Cook County; the Hon. FARLIN Q. BALL, Judge, presiding. Heard in this court at the March term, 1898. Affirmed. Opinion filed December 6, 1898.

This is an appeal from an interlocutory order of injunction. The order restrained the appellant association and its directors (the latter acting as liquidators under the statute) from accepting stock or stock liability of the company in payment for its assets, or, inversely, from exchanging the property and assets of the company in consideration of the surrender and cancellation of stock or stock liability.

The appellant association was organized in 1885, and continued to do business as a building association until about January 28, 1898, at which last mentioned date a stockholders' meeting was held, in pursuance of the statute, for the purpose of determining whether the association should continue business, re-organize its affairs or go into voluntary liquidation.

The stockholders, by more than the two-thirds vote required by the statute, decided to enter upon a course of voluntary liquidation, and for that purpose elected a new board of directors and ordered that liquidation should be conducted by and through the agency of such board.

The resolutions of liquidation, after having been adopted by the stockholders' meeting, were filed with the auditor of public accounts, and thereupon, at his request, the directors, in their capacity as liquidators, entered into and filed with him a bond, which was approved by the auditor.

The resolutions, among other things, provided " that said board shall have power to trade and exchange the assets of said association in payment and satisfaction of the obligations thereof, and to cancel stock by the transfer to the holder thereof of any of the assets and property, real or personal, of said association, or of the loans due and owing to it."

Canadian-American Loan & Building Ass'n v. Quimby.

In pursuance of this power, the directors, on or about August 12, 1898, mailed to each shareholder a list of the assets and liabilities of the association, and an itemized statement of the real estate held and owned by it, and a statement of the cost of each parcel thereof to the association, together with a request for bids for the purchase of such real estate, to be paid for either in cash or stock of the association, or part cash and part stock; such bids to be received and acted upon on September 14th, at a regular meeting of the board to be then held.

The statement of assets and liabilities, as of July 1, 1898, shows nominal assets amounting to $52,740.34, nominal liabilities of $43,483.17, and a nominal surplus of assets over liabilities of $9,257.17.

The assets consist almost entirely of real estate, and the liabilities almost entirely of stock payments made by members.

The bill of complaint was filed by a withdrawing stockholder for the purpose of winding up and administering the affairs of the association through a receivership, and of enjoining and restraining the liquidators from exchanging property of the association in satisfaction of stock liability.

The bill alleges insolvency of the association since April, 1897. It also alleges that certain of the stock issued as matured stock was fraudulently issued, and that the directors, i. e., liquidators, are about to accept this fraudulently issued stock in payment for portions of its assets.

The injunction order which was issued upon the bill of complaint prohibits the association, its liquidators, officers, directors and agents, from selling, exchanging or otherwise disposing of any of the real or personal property of the association by accepting in payment therefor, either in whole or in part, any stock or stock liability of the association. From this order the appeal here is prosecuted.

DEFREES, BRACE & RITTER, attorneys for appellants.

J. ERB, attorney for appellee.

108    APPELLATE COURTS OF ILLINOIS.

VOL. 79.] Canadian-American Loan & Building Ass'n v. Quimby.

MR. JUSTICE SEARS delivered the opinion of the court.

The contention of counsel for appellants is based upon the assumption that the building and loan association is a solvent corporation.

The argument proceeds upon the theory that such an association has the right, as a solvent and going concern, to exchange its assets for stock or stock liability; that the provisions of the statute for effecting liquidation contemplate the direction of such liquidators in the discharge of their duties by resolution of the association; and that the association here did by its resolution direct their liquidators to thus exchange assets, *i. e.*, real estate of the corporation, for stock, or in extinguishment of stock liability of the association.

One difficulty of the argument lies in the fact that it assumes the solvency of the association, while the verified allegations of the bill of complaint, upon which the chancellor acted in granting this order, distinctly aver the insolvency of the same.

The bill of complaint alleges that at the annual meeting of the association held in April, 1897, it was announced by the president that between forty and fifty thousand dollars of the assets of the association had been misappropriated by certain officers of the association, and alleges that " by reason of the defalcation of its officers the association became insolvent and unable to continue its operations as a building association," etc.

There is another element in the bill of complaint which is in effect ignored by counsel for appellants in their argument, viz., the allegation that certain of the stock of the association was fraudulently issued as matured, when in fact it was not properly matured stock, and the further allegation that the liquidators were about to accept this fraudulent stock in exchange for the real estate, *i. e.*, the assets of the association.

Whether the method of distribution of assets of an insolvent corporation, here sought to be followed by the directors of this association, is lawful or not, it is at least certain that it should not in equity be permitted when the carrying of

it out involves the acceptance of stock fraudulently issued in payment for such assets.

Counsel for appellants contend that appellee, having notified the association of her intention to withdraw as a stockholder, she became thereby a creditor of the association, entitled to sue as upon a simple contract claim—citing Prairie State Ass'n v. Gorrie, 167 Ill. 414; to which might be added The Granite S. P. Ass'n v. Sonderman, 48 Ill. App. 433, and The Granite S. P. Ass'n v. Lloyd, 145 Ill. 620. And that, being a simple creditor, without judgment, she can not maintain this bill.

But this doctrine, as announced in the cases cited, would not apply to determine appellee's relation to the association as a stockholder, her liability as such, or her right to question a distribution of its assets, where the association was, as here alleged, insolvent before the withdrawal is made. Chapman v. Young, 65 Ill. App. 131.

Upon the allegations of the bill of complaint that the association was insolvent, and that the stock, which it was proposed to accept in lieu of cash payment for the assets, was in part stock fraudulently issued, we think that the chancellor was fully warranted in issuing the restraining order.

We do not regard the circular presented at the hearing as evidence which was at all conclusive upon either the question of insolvency or fraud in issuing of the stock.

The order is affirmed.