# Mabel T. Rickert v. Joseph W. Suddard and Arthur S. Welch, Receivers.

1. BUILDING AND LOAN ASSOCIATIONS—*What is a Perfected Withdrawal.*—A perfected *bona fide* withdrawal from a building and loan association, with payment to the shareholder of the amount allowed him, puts an end to the membership and to all rights and liabilities of member and association in relation to each other.

2. SAME—*Effect of Notice of Withdrawal—Insolvent Associations.*—Notice of withdrawal from an insolvent association does not entitle a member to priority of payment over fellow-members. A member who has given notice of withdrawal from such an association, can not, if the association is found to have been insolvent when the notice was given, be permitted to receive any more than his just proportion of assets, and must share losses with other members.

3. SAME—*Checks Given in Payment of Withdrawals.*—Where a member gives notice of his withdrawal and is paid by a check upon the funds of the association in bank, but before such check is presented for payment the funds of the association are withdrawn and the association itself becomes insolvent, the rights of the holder of the check are to be determined by the solvency of the association at the time that the check was given.

4. SAME—*Insolvency of, How Determined.*—The insolvency of a building and loan association is a question of fact to be determined the same as similar questions of fact arising in other cases.

**Intervening Petition.**—Trial in the Circuit Court of Cook County; the Hon. ELBRIDGE HANECY, Judge, presiding. Hearing and decree; appeal by petitioners. Heard in this court at the October term, 1898. Affirmed. Opinion filed February 9, 1899.

Appellant was a stockholder in the Mechanics & Traders Savings, Loan and Building Association, holding five shares in the forty-sixth series, issued January 18, 1887, and five shares in the sixty-fourth series, issued July 6, 1891. In October, 1896, she gave notice of withdrawal for the stock in the sixty-fourth series; on February 15, 1897, the board of directors declared the stock in the forty-sixth series matured; and on June 22, 1897, she assigned and delivered all of her stock to the association, which was canceled, and in payment therefor was given a check for $717.70 on the

American Exchange National Bank of Chicago.   On July 27, 1897, Jacob Kuble and others filed a bill in the Circuit Court of Cook County against this association, alleging acts of mismanagement on the part of its officers, praying for an investigation, a receiver, etc.   On July 31st, four days afterward, the State Auditor appointed a custodian for the association, who immediately took possession of its assets and withdrew the money on deposit, over $4,000, out of the bank.   On August 7th appellant's check was presented for payment at the American Exchange National Bank, but payment was refused because no funds of the drawer were then on deposit.   On August 13th, the people, on the relation of the State Auditor, filed a bill in the Circuit Court of Cook County against the association, whereupon three receivers were appointed, and upon the order of the court the money in the hands of the custodian was paid over to the receivers.   Having given notice to all parties in the suit and having obtained permission of the court, appellant filed an intervening petition in the cause on August 30th, claiming that $717.70, then in the hands of the receivers, was her property and rightfully belonged to her by reason of the prior assignment thereof by the association, as evidenced by the check, and asking that the receivers be ordered to pay it over to her.   The receivers answered that the check was given for stock canceled; that at the time the notice of withdrawal was given, and at the time part of the stock was declared matured, the association was insolvent; that petitioner was not paid in the order of giving withdrawal notice, and that therefore she occupied the position of a stockholder, notwithstanding the giving of the check.   The petitioner (appellant) filed exceptions to that part of the answer which alleged insolvency and also to that part which alleged that petitioner was not paid in order of giving withdrawal notice, claiming those matters to be immaterial and impertinent. The court overruled the exceptions and petitioner filed a replication to said answer.   The cause was referred to a master in chancery to take evidence and report with conclusions, upon the issues raised.   On July 12, 1898, the cause came on to be

heard by the court upon the master's report and the exceptions of petitioner thereto, and the court found that petitioner continued to be a stockholder, notwithstanding the giving of the check and the surrender and cancellation of her stock; and that she was only entitled to her *pro rata* share of the assets of the association. From this decree the appeal here is prosecuted.

NORMAN H. CAMP, attorney for appellant.

The drawing and delivery of a check upon a fund deposited in a bank is in effect an assignment of such fund and operates precisely as if the money was, in fact, drawn out of the bank and paid to holder of the check. Munn v. Burch, 25 Ill. 36; Brown v. Leckie, 43 Ill. 500; Union Nat. Bank v. Oceana Co. Bank, 80 Ill. 212; Bank of Am. v. Ind. Banking Co., 114 Ill. 483; Abt v. Am. Trust & Savings Bank, 159 Ill. 467; Bank of Am. v. Bank of Ill., 164 Ill. 504; National Safe & Lock Co. v. The People, 50 Ill. App. 338.

A check is accepted as a particular form of cash payment. When given in payment and afterward paid it becomes a valid payment as of the date of its receipt. 18 Am. & Eng. Ency. of Law, 151, 174; 21 Am. & Eng. Ency. of Law, 638; Benjamin on Sales, Secs. 729, 730, 732; Hunter v. Wetsell, 17 Hun (N. Y.), 135; 84 N. Y. 549; Henry v. Conley, 48 Ark. 267; Comptoir, etc., v. Dresbach, 78 Cal. 15; Mullins v. Brown, 32 Kan. 312; U. S. v. Thompson, 33 Md. 575; Good v. Singleton, 39 Minn. 340; P. & P. U. Ry. Co. v. Buckley, 114 Ill. 337; Ryan v. Dunlap, 17 Ill. 43; 2 Greenleaf on Evidence, (15th Ed.), 519; Strong v. King, 35 Ill. 20; 2 Daniel on N. Paper, Sec. 1623; Bailey v. Pardridge, 134 Ill. 188.

A perfected withdrawal from a building and loan association followed by payment of the amount allowed puts an end to the membership and no further rights or liabilities on the part of either the association or the member exist. 4 Am. & Eng. Ency. of Law (2d Ed.), 1052; Endlich on Building Ass'ns Secs. 81, 82, 108; Bowker v. Mill River Loan Ass'n, 7 Allen (Mass.), 100; Re West Riding of Yorkshire Society, 45 Ch. D. 463; Miller v. Jefferson Bldg. Ass'n,

50 Pa. St. 32; Priestly v. Hopwood, 12 W. R. 1031; S. C., 10 L. T. N. S. 646; Archer v. Harrison, 7 DeG., M. & G. 404; Jeffries v. Life Ins. Co., 22 Wall. (U. S.) 47–53; Booz's Appeal, 109 Pa. 592; Hoboken Bldg. Ass'n v. Martin, 13 N. J. Eq. 428; Christian's Appeal, 102 Pa. St. 184; McKinney v. Diamond Ass'n, 18 Atl. Rep. 905; In re Sheffield Permanent Bldg. Soc., 22 Q. B. Div. 470; Doughten v. Camden Bldg. Ass'n, 41 N. J. Eq. 556; In re Blackburn Soc., L. R. 6 Ch. 815; Anchor B. & L. Ass'n v. Blouse, 5 Penn. Dist. Rep. 321; Mutual B. & L. Ass'n v. Tascott, 143 Ill. 305.

As between the holder of a check and an assignee or receiver of an insolvent drawer, the former is entitled to the money. German Savings Inst. v. Adae, 8 Fed. Rep. 106; National Safe & Lock Co. v. The People, 50 Ill. App. 338; Abt v. Am. Tr. & Sav. Bank, 159. Ill. 467; 3 Am. & Eng. Ency. of Law (1st Ed.), 596, and cases there cited.

Upon giving notice of withdrawal a stockholder ceases *eo instanti* to be a member of the association and assumes the character of a creditor toward it. He is not liable for losses occurring after he withdraws. Endlich on Building Ass'ns, Secs. 110–136; Thompson on Bldg. Ass'ns, 128; U. S. Bldg. Ass'n v. Silverman, 85 Pa. St. 396; Nat. Bldg. Ass'n v. Hottenstein, 10 Pitts. L. J. 225.

When stock matures the holder has a right to have it paid in full. Endlich on Bldg. Ass'ns, Sec. 117; In re Mechanic's Ass'n, 7 Atl. Rep. (Pa.) 728; S. C., 6 Centr. Rep. 580.

The directors of an association have power to settle with its debtors and withdrawing members, and their acts are the acts of the association, binding it, in every particular, equally as if done by all its members. Endlich on Bldg. Ass'ns, Secs. 198, 199, 323, 418; State v. Oberlin Bldg. & L. Ass'n, 35 Oh. St. 258; 23 Am. & Eng. Ency. of Law, 676, 687.

In order to have escaped the entry of a judgment against it the defendant association would have had to allege and prove that the association was actually insolvent before the withdrawal notice was given; the burden of proof would

have been on the association.    Endlich on Bldg. Ass'ns, Sec.
111; U. S, Bldg. Ass'n v. Silverman, 85 Pa. 394–398; National Bldg. Ass'n v. Hottenstein, 10 ·Pitts. Leg. J. (Pa.),
225; 2 Am. & Eng. Ency. of Law (1st Ed.), 649–651; Greenleaf on Evidence, Secs. 74–78.

    The appointment of a receiver does not in any way affect
the legal title to property.   ·He stands indifferent between
the parties, is the agent of neither, and· can interpose no
other defense than that which the party over whom ·he is
appointed could· have done.    20 Am. & Eng. Ency. of Law,
pages 11, 13, 126, 130, 137, 252; Honegger v. Wettstein, 94
N. Y. 252; High on Receivers, Secs. 1 and 2.

    In determining whether an association or an individual is
insolvent, fair valuations must be put upon their property
and not cash values to be derived at forced sales.    National
Bankruptcy Law, Sec. 1 (15); Dodge v. Mastin, 17. Fed.
·Rep. 660; 14 Am. & Eng. Ency. of Law, 468; Lawrence v.
Boston, 119 Mass. 126; Somerville & E. R. Co. v. Dougherty,
22 N. J. L. 495.

    The doctrine that a check operates as an equitable assignment is based upon the theory that the money is to be paid
out of a specific fund, and the implied contract between the
depositor and the bank that the depositor may appropriate
portions of the fund by giving checks.  In this case, the
money having been withdrawn from the bank and become
a part of the assets of the association prior to the presentation of the check, there was no specific fund upon which
the check could operate, and it amounted to nothing more
than a check by the association upon itself, which would not
assign to the holder of the check any portion of the assets
of the association.    Commonwealth v. American Life Ins.
Co. (Penn.), 29 Atl. Rep. 660.

  Even if it should be held that the giving of the check constituted an assignment of the funds in a bank, even after
the association, by its receivers, repossessed itself of the
fund, the most that could be claimed would be that the association and its receivers took so much money belonging to
the· appellant ·in trust for her.   This money went back into,

became mingled with and constituted a part of the insolvent estate, and the appellant, not having identified any specific portion of the estate as belonging to her, will simply occupy the position of any other creditor or stockholder. Bayor v. American Trust & Savings Bank, 157 Ill. 62; Lantermann v. Travous, 73 Ill. App. 670; Union Nat'l Bank v. Goetz, 138 Ill. 127; Wetherell v. O'Brien, 140 Ill. 146; Ill. Trust & Savings Bank v. First Nat'l Bank, 15 Fed. Rep. 858; Commercial Nat'l Bank v. Armstrong, 39 Fed. Rep. 684.

If the appellant in this case is paid the amount of her check the payment must be made out of the assets of the insolvent estate in the hands of the receivers. Assets of an insolvent building and loan association must be distributed upon equitable principles, and unless the money has been actually paid out by the association prior to the appointment of receivers, a stockholder, in whatever form his obligation may have been merged, still remains a claimant upon the ground of stock interest, and must bear his losses with the other shareholders. Chapman v. Young, 65 Ill. App. 131; Criswell's Appeal, 100 Penn. St. 488; Mechanics & W. B. & L. Ass'n v. Swartz, 5 Penn. Dist. Rep. 318; Archer B. & L. Ass'n v. Blouse, 5 Penn. Dist. Rep. 321; Commonwealth v. Am. Life Ins. Co. (Penn.) 29 Atl. Rep. 660.

A person who has given notice of withdrawal from a building association can not, if said association is found to be insolvent, receive any more than his just proportion of the assets, and must share his losses with the other shareholders. Chapman v. Young, 65 Ill. App. 131; Hohenshell v. Home S. & L. Ass'n (Mo.), 41 S. W. Rep. 948; Rabbitt v. Wilcoxsen (Ia.), 72 N. W. Rep. 306; Gibson v. Safety Loan & Homestead Ass'n, 170 Ill. 44; Vincent v. Harrison B. & D. Co., 5 Ohio N. P. 273; Christian's Appeal, 102 Pa. St. 184.

Neither holders of stock which has been declared matured or stock which is fully paid up, and payable on demand, are entitled to any preference in the distribution of the assets of an insolvent building association. Post v. Mechanics B. & L. Ass'n, 97 Tenn. 408; 37 S. W. Rep. 216; Criswell's Appeal, 100 Penn. St. 488; Hohenshell v. Home S. & L.

Ass'n (Mo.), 41 S. W. Rep. 948; Gibson v. Safety L. & H. Ass'n, 170 Ill. 44; Towle v. American B. & L. Ass'n, 75 Fed. Rep. 938.

A receiver of a building association represents not the corporate entity but the shareholders, and the estate must be collected and distributed, not according to the rules governing a building association as a corporate entity, but upon principles of equity. Chapman v. Young, 65 Ill. App. 131; Curtis v. Granite State Provident Ass'n (Conn.), 36 Atl. Rep. 1023; Towle v. Am. B. & L. Ass'n, 75 Fed. Rep. 938; Eversmann v. Schmitt (O.), 41 N. E. Rep. 139.

PAM, DONNELLY & GLENNON, attorneys for appellees, contended that the final decree finding the association to be insolvent is binding upon the petitioner in this case for two reasons:

First. A decree finding a building association to be insolvent is binding upon all the stockholders, whether made parties or not. Eversmann v. Schmitt (O.), 41 N. E. Rep. 139; Curtis v. Granite State Prov. Ass'n (Conn.), 36 Atl. Rep. 1023.

Second. Because the appellant entered her appearance in the case and was in court and a party to all the proceedings in the case where said decree was entered, and bound thereby. Frank v. Wedderin, 68 Fed. Rep. 818; Riley v. 1st Nat. Bank, 31 Atl. Rep. 585; Nelson v. Jenks, 52 N. W. Rep. 1081.

Withdrawing shareholders of a building and loan association must be paid in the order in which their notices of withdrawal are filed. Hoyt v. Inter Ocean Bldg. Ass'n, 58 Minn. 345; Batten v. City Bldg. Socy., 72 L. T., 87; Ward v. North Fairmount B. & L. Co., 5 Oh. N. P. 133.

MR. JUSTICE SEARS delivered the opinion of the court.

It is conceded in the arguments of counsel that a perfected *bona fide* withdrawal from a building and loan association, with payment to the shareholder of the amount allowed him, puts an end to the membership and to all rights

and liabilities of member and association in relation to each other. Endlich on Building Associations, Secs. 82, 108.

It is also conceded that notice of withdrawal from an insolvent association does not entitle a member to priority of payment over fellow-shareholders. A member who has given notice of withdrawal from such an association, can not, if the association is found to have been insolvent when the notice was given, be permitted to receive any more than his just proportion of assets, and must share losses with other shareholders. Gibson v. Safety L. & H. Ass'n, 170 Ill. 44; Chapman v. Young, 65 Ill. App. 131; Canadian Bldg. Ass'n v. Quimby, 79 Ill. App. 105.

It is, however, questioned in the arguments of counsel, whether the evidence here warrants a conclusion that this association was insolvent in October, 1896, when the withdrawal notice was given by appellant.

This appeal lies from a decree upon an intervening petition. A decree entered in the cause in which this petition was filed upon December 22, 1897, finds that on July 1, 1897, the association was insolvent, and that its liabilities exceeded its assets by the sum of $284,000. Upon the hearing of the issues raised by this petition, evidence was produced to show that the association was also insolvent in October, 1896. E. A. Gore testified that he was experienced in examining into the condition of building and loan associations; that he had examined the condition of this association; that there were other withdrawal notices given prior to that of appellant; that one of such withdrawing shareholders had not been paid when it was sought to pay appellant; that he ascertained the true condition of the association on September 20, 1897; that it was insolvent at that date and also on June 22, 1897, and that the deficit at such times amounted to $284,000; that in October, 1896, the association was insolvent, and that its condition was then better only to the extent of $40,000 than in September, 1897. This witness stated that in forming his opinion he had considered the cost of the real estate owned by the association, and also reports of expert appraisers. The witness was

not wholly consistent as to his knowledge of real estate values. At one time he testified that he was not " a real estate man," and was ignorant of real estate values. At another time, later in his examination, he testified that he could very closely determine the value of such property by knowledge of its location, which is substantially all that a real estate expert can do.

Against this testimony, unsatisfactory as it is, nothing whatever was offered. It appeared by the decree that the association was largely insolvent in July, 1897, and it appeared from the testimony that its condition was not better, except to the extent of $40,000, in October, 1896.

We think it clearly determinable from all the evidence, that the association was insolvent to the extent of a deficit of at least $244,000 in October, 1896, when appellant's notice of withdrawal was given, and in February, 1897, when the stock of the forty-sixth series was declared matured.

It is claimed that payment here has been fully made by the giving of the check, and that such payment controls. We think not. Whatever might be said of the right of appellant ordinarily, as against the drawer of the check, to the fund upon which it was drawn, yet it remains a fact that the check, given on account of a supposed obligation, which obligation did not equitably exist, was not presented while funds were in bank, and has not yet been paid, nor has the supposed obligation been satisfied. In this suit upon the intervening petition here, such payment of the supposed obligation is, in effect, sought to be enforced.

In Chapman v. Young, *supra*, it was held that although the shareholder seeking to withdraw had obtained judgment against the association, yet upon it being determined that the association was insolvent when his withdrawal notice was given, the collection of such judgment would be controlled by a court of equity, and that the character of his claim was not altered by the fact of obtaining judgment.

In this case, in view of the insolvency of the association when the notice of withdrawal was given, and when the check was drawn, we hold that a payment should not in

equity be permitted. Having reached this conclusion, we find it unnecessary to consider other questions raised, except one, viz., as to the fees of the master in chancery. It is claimed by the appellant that the fees of the master in chancery are too large, and that the court below has failed to pass upon the propriety of them. We are unable, from this record, to determine whether they are proper. The decision here, affirming the decree, is made without prejudice to the rights of appellant to have a motion to fix the amount of the master's fees hereafter considered by the trial court. The decree is affirmed.