## Columbus Building and Loan Association et al. v. Joseph Kriete et al.

1.   BUILDING AND LOAN ASSOCIATIONS—*No Power to Receive Deposits —Ultra Vires.*—Under the statutes (Hurd's Rev. Stats. 1895, Chap. 32, pages 415 to 419, Sec. 13) a building and loan association has no power to receive deposits or to borrow money and contract and to repay the same.

2.   SAME—*Can Not Do a Banking Business.*—A building and loan association can not lawfully do what is practically a banking business by the receipt of deposits of money from and agreeing to pay interest thereon to persons who do not take stock in the association therefor.

3.   SAME—*Books as Admissions.*—The books of a building and loan association, as between it and its stockholders, are evidence against the association as admissions.

4.   NOTICE—*To Parties Dealing with Building and Loan Associations.*—A party dealing with a corporation having limited and delegated powers conferred by law, is chargeable with notice of such powers and limitations, and can not plead ignorance in avoidance of the defense of *ultra vires.*

5.   SAME—*Payments to the Association.*—Where the secretary of the association is, under its by-laws, the person authorized to receive money, payments made to him are payments made to the association.

Error to the Superior Court of Cook County; the Hon. FARLIN Q. BALL, Judge, presiding.   Heard in this court at the October term, 1899. Reversed in part, affirmed in part, with directions.   Opinion filed February 5, 1900.

**Statement by the Court.**—March 22, 1897, a bill was filed by a shareholder in the building association, plaintiff in error herein, for the appointment of a receiver of the

property of the association, because of its insolvency and violation of the statute in certain respects alleged, and asking that the affairs of the association be wound up and its assets, after the payment of its debts, distributed among the shareholders.   A receiver was appointed, who qualified and entered upon his duties, and thereafter Joseph Kriete and forty-seven others, defendants in error herein, filed petitions, each of which, in substance, alleges that he deposited in said association certain sums of money, giving the dates and amounts of such deposits, which amounts, and each of them, the association promised to pay to petitioners, together with interest at six per cent per annum, and prays that claims may be allowed against said association for said amounts, respectively, and allowed as claims in favor of said petitioners, respectively, as outside creditors, and that the same be paid out of the funds in the hands of the receiver in full, after deducting the costs and charges of the administration of the estate of the association.

The receiver answered each of said petitions, denying the allegations thereof, and setting up that none of the petitioners were shareholders or members of the association; that whatever money they or either of them deposited was deposited with the secretary of the association individually, and denies that the association ever received any money from persons not members of the association, and says that the association was not authorized by law to receive money on deposit, or to borrow money and agree to pay interest thereon, other than to receive money on shares of stock; and that borrowing money by the association from persons not members thereof was *ultra vires*, and beyond the powers of the association as defined by its charter.

An order of reference of said petitions to a master of said court was made, directing him to take proofs and report his conclusions thereon of law and fact, and the master, after taking evidence, which is very voluminous, reported the same to the court with his conclusions.   The master finds, among other things, that prior to the insolvency of the association Joseph Kriete, and twenty-seven others of said

petitioners (naming them), made deposits of cash in and withdrawals from said association, and that there was due to said petitioners so making such deposits the several amounts set opposite their names, respectively, which included interest, at five per cent per annum. The aggregate of such deposits, with interest, is about $17,000. The master found that each of these twenty-eight petitioners made their respective deposits, not as stockholders of, but as loans to the association, the same to bear interest and to be returned on demand. He also found that they had liens for the amounts due them, respectively, superior to other creditors of the association, whose liens were for money due them on account of withdrawal values of stock.

The master also found that Albert Truka and nineteen others of said petitioners (ra·ning them) owned stock in the association which matured prior to its insolvency, and was so declared by the directors and passbooks issued to them, and that there was due to these twenty petitioners (naming them) the several amounts set opposite their names, specifying such amounts, the aggregate of which was more than $15,000. The master also found, as matter of law, that these last named stockholders had no better or prior lien on the assets of the association than other stockholders, whether their shares had matured or not.

On a hearing of exceptions to the report, all the findings of fact made by the master were approved and confirmed, but exceptions as to his conclusions of law as to the petitioners, Albert Truka and the nineteen others who were found to be stockholders of the association, were sustained, and the chancellor entered a decree in accordance with the master's report, both as to his conclusions as to fact and law as to Joseph Kriete and the twenty-seven other petitioners in his class, and directing that the receiver pay out of the first moneys coming into his hands, after the payment of expenses of administration, the several amounts found due said twenty-eight last mentioned petitioners, respectively, but directing that as to Albert Truka and the nineteen other petitioners in his class, whom the master

found were stockholders, although finding the facts the same as the master, decreed that these twenty petitioners (naming them) have liens upon the funds of the association for the respective amounts found due them, prior and superior to the claims of unmatured stockholders and members of the association, but subject to the costs of administration and the rights of outside creditors, and directed the receiver to pay their claims accordingly, prior to the payment of the claims of any stockholders whose claims were upon stock which had not matured prior to the insolvency of the association.

From this decree the association prosecutes this writ of error.

JAMES J. HOCH and HARRY P. SIMONTON, attorneys for plaintiffs in error; MUND & SIMONTON, of counsel.

A building and loan association organized under the laws of Illinois has no authority to borrow money or accept cash deposits. Such contract is *ultra vires*. Rhodes et al. v. Missouri S. & L. Co., 173 Ill. 621; Endlich on Building Associations (2d Ed.), Sec. 275.

A building and loan association has no power to borrow money for the purpose of loaning it, since the money to be loaned by such association can only be properly accumulated by dues, fines, premiums and interest. State v. Oberlin B. & L. Ass'n, 35 O. St. 258.

The acceptance of " cash deposits," without the authority and direction of the directors of a building and loan association, is not, in the absence of a by-law granting such authority, within the scope of the authority of a secretary of such association. Endlich on Building Associations (2d Ed.), Sec. 174.

A secretary of a building and loan association can not, under any circumstances, bind the society against its will, by its single-handed acts, where they are either *ultra vires* of the association or clearly such as are beyond the ordinary functions of the office, and therefore require the consent of the board of directors. Endlich on Building Associations (2d Ed.), Sec. 174.

Third persons dealing with an agent are put upon their guard by the very fact, and do so at their own risk. They can not rely upon the agent's admissions of authority, but are to be regarded as dealing with the power before them, and must, at their peril, observe that the acts done by the agent are legally identical with the acts authorized by the power. Baxter v. Lamont, 60 Ill. 237; Abrahams v. Weiller, 87 Ill. 179; Endlich on Building Associations (2d Ed.), Secs. 230, 231, 233; Thompson on Corporations, Sec. 4, 886–7; Morawetz on Corporations, Vol. 1, Sec. 531.

Where third parties deliver money to an ostensible agent of a corporation, the receipt of such money being beyond the power and authority of the agent, such third parties make the agent receiving the same their agent for the transmission of the money to the corporation, and the corporation is not liable if the agent embezzles the same and the money does not reach the coffers of the corporation. Manhattan Co. v. Lydig, 4 Johns. (N. Y.) 377.

SIDNEY C. EASTMAN and EDMUND FURTHMANN, attorneys for defendants in error.

A building and loan association organized under the laws of Illinois has authority to borrow money. Grommes et al. v. Sullivan, 81 Fed. Rep. 47.

Under the statute (R. S. Ill.), Chap. 32, entitled " Loan Associations," Sections 69–81, the plaintiff in error was empowered by implication to incur debt in various ways :

To its secretary for his services.

To withdrawing members.

To the representatives or beneficiaries of deceased members.

To strangers of the association for stationery, office supplies, office rent, and for real estate to be used as a place of business.

By express provision it was authorized:

" To purchase at any sheriff's or other judicial sale, or at any other sale, public or private, any real estate in which it had an interest, and the real estate so purchased,

to sell, etc., convey, lease or mortgage at pleasure, to any person or persons whatsoever." Ill. Rev. Stat., Chap. 32, Sec. 81.

This power to mortgage its real estate imported necessarily the power to borrow or in some way to become indebted. Grommes et al. v. Sullivan, 81 Fed. 47.

The association, having the power to become indebted, to borrow money, is estopped to raise the question of *ultra vires*, because it has received the benefit of the contract in receiving the deposits from defendants in error. National Home Building Association v. Bank, 181 Ill. 43; Ottawa P. R. Co. v. Murray, 15 Ill. 336; Bradley v. Bullard, 55 Ill. 413; Darst v. Gale, 83 Ill. 136; Kadish v. Garden City L. & B. Ass'n, 151 Ill. 531; McNulta v. Corn Belt Bk., 164 Ill. 427; Eckman v. C., B. & Q. R. R., 169 Ill. 312.

If agents conduct themselves so that, if they had been acting for private employers, the person for whom they were acting would have been affected and bound by their conduct, the same rule must prevail when the principal under whom the agent acts is a corporation. Insurance Co. v. Schettler, 38 Ill. 166; Inter-State Building Association v. Ayres, 177 Ill. 9; Merchants' Bank v. Bank, 10 Wall. 604; Railroad Co. v. Schuyler, 34 N. Y. 30; Railroad Co. v. Quigby, 21 How. 202; Bank v. Graham, 100 U. S. 699; Henderson v. Railroad Co., 17 Tex. 560; Rolling Mill Co. v. State, 54 Ga. 635; Frankfort Bank v. Johnson, 24 Me. 490; Allison v. Railroad Co., 46 S. W. Rep. 348.

A corporation, like a private individual, may by its acts ratify the unauthorized transactions of its agents. Drescher v. Fulhem, 52 Pac. Rep. 685; Miller v. Matthews, 40 Atl. Rep. 176; Ragland v. McFall, 137 Ill. 81.

When the officers or agents of a corporation exercise powers affecting the interests of third parties, which presupposes a delegated authority for that purpose, and other acts subsequently performed show the corporation must have contemplated the legal existence of such authority, the acts of such officers or agents will be deemed rightful and the delegated authority will be presumed. Insur-

ance Co. v. Schettler, 38 Ill. 166; Railroad v. Dalby, 19 Id. 353; Miners' Ditch v. Zellerbach, 37 Cal. 543; Metropole Bath Co. v. Fan Co., 50 Ill. App. 681; Supervisors v. Schenck, 5 Wall. 772; Insurance Co. v. White, 106 Ill. 67; Railroad Co. v. Schuyler, 34 N. Y. 58; Page v. Water Co., 31 Fed. Rep. 257.

If it is possible, under any hypothetical condition of facts, for an act to be within the express or implied power of a corporation, the corporation will be estopped in a particular instance to say that the act is not within such expressed or implied power, when such a defense would be to the injury of a party contracting with it, unless the act itself is *malum prohibitum* or *malum in se*. Bissell v. Railroad Co., 22 N. Y. 258; Railroad Co. v. Schuyler, 34 Id. 30; Grommes v. Sullivan, 81 Fed. Rep. 45; Supervisors v. Schenck, 5 Wall. 772; Railroad Co. v. McCarthy, 96 U. S. 258; State Board of Agriculture v. Railway Co., 47 Ind. 407; Miners' Ditch v. Zellerbach, 37 Cal. 543.

The plea of *ultra vires* should not, as a general rule, prevail, whether interposed for or against a corporation, when it would not advance justice, but, on the contrary, would accomplish a legal wrong. Kadish v. Building Association, 151 Ill. 531; Whitney Arms Co. v. Barlow, 63 N. Y. 62; Darst v. Gale, 83 Ill. 136: Railway Co. v. McCarthy, 96 U. S. 258; San Antonio v. Mehaffy, Id. 312.

When a party dealing with a corporation has acted in good faith, and the contract has been completely executed, the corporation receiving the benefit thereof, and nothing remains to be done except the payment by the corporation to the party, the corporation is always estopped to set up its want of authority as a defense, unless the transaction is *malum in se* or *malum prohibitum*. This is always the law, even though the party contracting with the corporation knows at the time that the corporation is transacting business beyond its chartered powers. Bradley v. Ballard, 55 Ill. 413; Parish v. Wheeler, 22 N. Y. 494; Towers Excelsior Co. v. Inman, 23 S. E. Rep. 418; Eckman v. Railroad Co., 169 Ill. 312; Kadish v. Building Association, 151 Id. 531; Darst

v. Gale, 83 Id. 136; Sioux City Terminal Co. v. Trust Co.,
82 Fed. Rep. 124; Lyon v. Bank, 85 Id. 120; Central Trust
Co. v. Railway Co., 87 Id. 815; Speer v. Commissioners, 88
Id. 749; Railroad Co. v. Thompson, 103 Ill. 187; Dimpfel v.
Railway Co., 9 Biss. 127; Union Trust Co. v. Railroad Co.,
117 U. S. 434; Bank v. Matthews, 98 Id. 621.

The secretary, under the by-laws, was the only authorized
officer to receive money. The association having the
power to become indebted, to borrow money, etc., the pay-
ment to the secretary was payment to the association.
Prairie State Association v. Nubling, 170 Ill. 245.

MR. JUSTICE WINDES, after making the above statement,
delivered the opinion of the court.

Defendants in error have moved to strike from the record
the certificate of evidence for divers reasons which can not
be here stated without needlessly extending this opinion.
It seems sufficient to say that we have examined each and
all the reasons assigned, are of opinion they are not well
taken, and overrule the motion; and besides, the conclusion
reached by the court would in no way be affected to the
detriment of defendants in error by overruling the motion.

The evidence, in our opinion, sustains all the findings
of fact of the master and of the chancellor, except as to
the finding that Joseph Kriete and the twenty-seven other
petitioners in his class made deposits in and withdrawals
from the association of the respective amounts stated in
the master's report and decree, as to which finding we are of
the opinion it is not sustained by the evidence; but all these
deposits are shown, by the clear weight of the evidence, to
have been made with David Sachel, secretary of the asso-
ciation, individually, with the belief on the part of each of
the petitioners that they were dealing with the association
through the secretary. It is not shown that any of these
deposits ever went into the treasury of the association, or
that they were ever used by the association. In fact, the
preponderance of the evidence is that the association received
none of this money. Also except as to when the insolvency

of the association occurred, and as to when the stock of Albert Truka and the nineteen other stockholders matured, and as to whether their stock was declared by the association to have matured prior to the insolvency of the association. As to these latter matters we are not prepared to say, after a careful and critical examination of the evidence, that the findings of the master and the court are manifestly against the evidence, and therefore as to these matters, which are not manifestly against the weight of the evidence, the finding of the master, the same being approved by the court, should not be disturbed by a court of review. Delaney v. Delaney, 175 Ill. 188; Biggerstaff v. Biggerstaff, 180 Ill. 407; Village of Itasca v. Schroeder, 182 Ill. 192.

As to the finding first above mentioned, that the deposits were made with the association by Joseph Kriete and the twenty-seven other petitioners in his class, we are of opinion that it is immaterial, under the law as hereinafter stated, whether such deposits were made with the association, or whether the association received and appropriated the money or not, or whether the deposits were made with Sachel as an individual.

A reference to the statute concerning building associations, which was in force at the time when the deposits in question were made, to wit, in the year 1897, and prior thereto (Hurd's Revised Stat. 1895, Chap. 32, Secs. 1 and 13), will show that it gives to the association no power whatever to receive deposits or to borrow money and contract to repay the same. In other words, for a building association to do what is practically a banking business by the receipt of deposits of money from and agreeing to pay interest thereon to persons who do not take stock in the association therefor, is wholly foreign to any power given to such an association by the statute, and is therefore *ultra vires*.

In the case of National Home Building Association v. Home Savings Bank, 181 Ill. 35, in which the question was to the power of a building association to acquire and hold real estate in which it had no interest, it was held that such power was wholly *ultra vires*. The court say:

"A party dealing with a corporation having limited and delegated powers conferred by law, is chargeable with notice of them and their limitations, and can not plead ignorance in avoidance of the defense " (citing cases).

And the court further say, with reference to the question of estoppel, which is in the case at bar so earnestly pressed by counsel for defendant in error:

"The cases in this court where the corporation has been held to be estopped have been where the act complained of was within the general scope of the corporate powers." Citing and reviewing divers cases in the Supreme Court.

The court also say:

"In this case the transaction was beyond the corporate powers and *ultra vires* in the strict and legitimate sense, and against public policy. It could not be ratified or become valid by acquiescence since there was no power to make it. Flora D. Bishopp, who dealt with the corporation, was chargeable with notice of its powers and their limitation, and its inability to enter into the contract. She could not make the void contract valid by acting under it. No action can be maintained upon the unlawful contract, and in such cases, if the courts can afford any remedy, it can not be done by affirming or enforcing the contract, but in some other manner."

We are of opinion that this ruling of the Supreme Court is conclusive against the right of the petitioners, Joseph Kriete and the twenty-seven others in his class, to recover for their deposits, even if made with the association as found by the master and the court, because the association was absolutely without power to make any such contracts, and of this petitioners are chargeable with notice. And if we are correct in saying that the evidence shows that none of these twenty-eight petitioners' money ever came to the possession and was never used by the association, then there is no basis for them to recover, even upon the theory of counsel for defendant in error, that the association, having the power for some purposes to become indebted for money borrowed, would be estopped from setting up the defense of *ultra vires*.

No point is made by plaintiff in error that the findings

Columbus Building & Loan Ass'n v. Kriete.

of the master, as to the nature of the business transacted between any of the petitioners and the association, or with the secretary, Sachel, nor as to the amounts of the several balances found to be due the several petitioners, respectively, but the only claim made is that the evidence does not support such findings as to the petitioners, Albert Truka and the nineteen other stockholders in his class, as to the maturity of their stock, whether it was declared matured prior to the insolvency of the association, and as to when that insolvency occurred.   The evidence bearing on these matters is so voluminous that we can not undertake in an opinion to set out even the substance of it, and we might be content with merely stating our conclusion as above, were it not, in our opinion, important to call attention specifically to a portion of the evidence in the record and the position assumed by counsel for plaintiff in error.

It appears from the account books of the association, which are in evidence, that at all times up to and long after Truka and the nineteen other petitioners in his class made their last payments upon stock purchased by them, that the association had a large cash surplus which was amply sufficient, with the other assets of the association, to make it solvent, and also that while the association thus appears by its books to have been solvent, the same books show that the stock of these petitioners matured and was paid up in full.   This evidence of payment is overcome by proof on behalf of petitioners, but the evidence as to the maturity of the stock is not.   Counsel for the association do not in their brief contend that the association did not recognize these twenty petitioners as holding matured stock, but only that they did not make strict and technical proof of the actual maturity of their stock.

The fact of the insolvency of the association does not appear to have been shown until about the time of the filing of the bill in this case, which was long after the maturity of the stock of these twenty petitioners, as shown by the proof in the case.   The solvency of the association was thus *prima facie* established, and it will be presumed to continue

until such time as insolvency was shown. The books of the association, as between it and its stockholders, are evidence against the association as admissions. Jones on Evidence, Secs. 272 and 530, and cases cited; Holden v. Hoyt, 134 Mass. 181, 184.

It was, then, in view of this *prima facie* proof, incumbent upon the association to show that it became insolvent before the maturity of the stock of these twenty petitioners, and before it was declared by the association to have matured, in order to maintain its defense. On this record it seems that could only be done by showing when the secretary, Sachel, appropriated to his own use and embezzled the large cash surplus which was shown by its books to have been on hand. When this appropriation or embezzlement took place does not appear, in fact, counsel for the association in their brief concede it was not proved, and we therefore say that the finding of the master and the court that the maturity of the stock of these twenty petitioners took place prior to the insolvency of the association, and was so declared by the association, is not manifestly against the evidence. And in this connection it should also be noted that the passbooks issued to most of these petitioners by the association, as well as the account books of the association, show that these twenty petitioners were treated as holders of matured stock; and the other evidence shows that all of the payments of money made by them or each of them were made to the secretary of the association, who was, under its by-laws, the person authorized to receive this money. Under such circumstances, payments made to the secretary were payments made to the association. Prairie State L. Ass'n v. Nubling, 170 Ill. 245.

The finding and decree of the court that these twenty petitioners were entitled to priority over the other stockholders in the association whose stock had not matured, was, in our opinion, correct. Endlich on Building Associations, Sec. 486; 7 Thompson on Corporations, Sec. 8736; Young v. Stevenson, 180 Ill. 608–14; Rickert v. Suddard, 80 Ill. App. 204.

The decree of the Superior Court, in so far as it gives a first and prior lien to the petitioners, Joseph Kriete and the twenty-seven others in his class, is reversed, with directions to dismiss each of these twenty-eight petitions for want of equity, and the decree as to Albert Truka and the nineteen other petitioners in his class, is affirmed. The costs of this appeal shall be paid from any funds of the association in the receiver's hands.

Reversed in part and affirmed in part, with directions.